THE STATE OF IOWA, Appellee, v. L. G. McKINLEY *et al.*, Appellants.

1. **Assault and Battery:** INFORMATION: FORM. An information which charges an assault upon the person of the informant, without naming the person, but which is subscribed and sworn to by him, is good.

2. ———: JUSTIFICATION: INSTRUCTIONS TO JURY. The informant having been forcibly evicted from a dwelling, which he had been occupying with the consent of the defendants, broke down a door for the purpose of regaining an entrance thereto, and, after throwing a stone at one of the defendants, entered the hallway, with his wife, at one end of which stood a loaded musket. The defendants followed the informant into the house, and there assaulted him. *Held*, that the jury was properly instructed that the honest belief of the defendants that the informant was going into the house for a gun to use would not justify them in following him, if they could have escaped from the peril to themselves by getting away.

3. ———: ———: EVIDENCE. It appearing that before the informant had surrendered possession of the leased premises, and before possession had been obtained by any legal procedure, the defendants, in his absence, nailed up the dwelling so as to exclude him therefrom, *held*, that evidence of the expiration of the lease under which the informant held said premises was immaterial.

4. ———— : ———— : ————.  The defendants having, previous to the assault, instituted proceedings to obtain the possession of said premises, *held*, that the records in such proceedings were properly admitted in evidence on behalf of the state.

*Appeal from Mitchell District Court.*—HON. J. C. SHERWIN, Judge.

TUESDAY, MAY 19, 1891.

THE defendants were convicted of the crime of assault and battery, and from the judgment of the district court imposing a fine upon each, they appeal. *Affirmed.*

*J. F. Clyde* and *G. E. Marsh*, for appellants.

*John Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for the State.

ROBINSON, J.—This action was commenced in a justice's court. The body of the information and the verifications are as follows:

"Defendants are accused of the crime of assault and battery, committed in Newburg township, Mitchell county, Iowa, on the twenty-third of March, 1889, upon the person of this informant, by said defendants then and there unlawfully, maliciously, striking, kicking, beating, bruising, injuring the person of said informant, contrary to the statutes. Informant asks for the arrest and punishment of said defendants according to law.

"[ Signed ]                    HARRY JONES.

"By F. F. COFFIN,
            "His Attorney.

"I, Harry Jones, on oath, do say the statements contained in the foregoing information are true.

                        "HARRY JONES."

The affidavit was sworn to by Jones before a justice of the peace, whose jurat is attached.

I.   Objection is made to the information on the ground that it does not show upon whom the assault

1. ASSAULT and battery: information.

and battery charged was committed. It is true the name of the person assaulted does not appear in the charging part of the information; but it is alleged that the assault was committed upon the person of the informant. The information was signed in the name of Harry Jones, and was verified by him, and the name of the informant referred to in the body of the information was clearly indicated. The affidavit is a part of the information, and should be so treated in construing it. *State v. Devine*, 4 Iowa, 446. It would have been more in harmony with approved usage had the name of the person assaulted been given in the charging part of the information; but the defect in form was substantially cured by the signatures and verifications.

II. Some months prior to the twenty-third day of March, 1889, the complainant Jones, by permission

2. ——: justification: instructions to jury.

of the defendant, L. G. McKinley, entered into the possession of certain premises in Newburg, including a dwelling-house and stable. From that time until after the transactions in controversy, Jones and his wife occupied the dwelling-house as a place of residence, and kept therein their household goods and furniture. A few days before the date named in the information, L. G. McKinley instituted proceedings in a justice's court to recover the possession of the property occupied by Jones. On the date named Jones and his wife closed and locked the dwelling-house, and went to Carpenter for the purpose of attending to the case which L. G. McKinley had instituted. The cause was continued on the application of McKinley, and Jones and his wife returned to their place of residence. There is much conflict in the evidence as to what then occurred, but there is evidence to support the theory of the state as to the material facts, which are claimed to be substantially as follows:

During the absence of Jones, the doors of the house had been in some manner fastened against him by the defendants, L. G. and G. A. McKinley. When he returned, L. G. McKinley was standing near the house,

and the other defendants, S. J. and G. A. McKinley, were in the immediate vicinity. When Jones reached the house, L. G. McKinley told him that the house was nailed up, and possession of it had been taken, and that he must keep away. Jones went away, and after a brief absence returned. He picked up two stones, one of which he handed to his wife with directions to break open a door. She followed the direction, broke open a door which opened into a hall, which she entered, throwing down the stone. Her husband followed her into the hall, after hurling the stone he had retained at L. G. McKinley.

The defendants followed him into the hall. Jones was there assaulted, and injuries were inflicted upon him. The defendants admit that the house had been fastened against Jones during his absence; that it was broken open upon his return, as stated; that they followed Jones into the hall, and that a struggle there ensued; but they claim that when Jones entered the hall after throwing the stone, it was for the purpose of procuring and using against them a loaded musket which stood in the opposite end of the hall; that he in fact seized the musket, and attempted to discharge it; and that what they did in the hall was done to prevent the wrongful use of the weapon by Jones, and was necessary for that purpose. Jones denies that he had touched the musket, and in that he is corroborated by his wife. The charge of the court in regard to the right of the defendants to follow Jones into the house is as follows:

"6. If the defendants, S. J. and L. G. McKinley, at the time Jones passed into the house, honestly believed that Jones was going for a gun to use, this would not justify them in following him, if they could have escaped from the peril to themselves, if any existed, by getting away. But if you find that the defendants, S. J. and L. G. McKinley, did honestly believe that Jones was going for a gun to do bodily injury to themselves or others, when he passed into the house, and if you further find that the said defendants could not avoid

peril to themselves or others by going away, then they would be justified in following the said Jones into, the house for the purpose of preventing injury to one or both of them or to others by use of a gun; and the use of force reasonably necessary to prevent bodily injury, under such circumstances, would not constitute assault and battery. But if the force used by either of the defendants, under these circumstances, was excessive, and used with intent to injure Jones unnecessarily, this would be an assault and battery."

The appellants complain of so much of that portion of the charge quoted as instructed the jury that the defendants, S. J. and L. G. McKinley, were not justified in following Jones into the house, even though they honestly believed he was going for a gun to use, if they could have escaped from the peril to themselves, if any existed, by going away. The grounds of the complaint seem to be that the defendants are, by the instruction, held to a more rigid rule than would govern a man of ordinary understanding and prudence, acting under similar circumstances; that the evidence shows that the defendants pursued the only reasonable course open to them in following Jones into the house to prevent his using the gun, and that, had they not done so, there was only a possibility that they would have escaped injury. We think the instruction was fully as favorable to the defendants as it should have been. The undisputed evidence shows that they were present for an unlawful purpose; that it was their intent to keep Jones and his wife out of the house. They did not at any time change their attitude toward Jones. They did not retreat, nor by other means show that they had abandoned their unlawful purpose, but seemed to be intent upon carrying it into effect. Therefore, the ordinary rules in regard to the right of self-defense did not apply.

III. The defendants complain of the refusal of the court to permit them to show the terms of the lease under which Jones took possession of the premises in which the affair in controversy took place.

3. ——: ——: evidence.

They claim that they could have shown that he had only, leased a portion of the dwelling-house; that his lease had expired; that he was not entitled to remain longer in possession of any part of the premises; and, therefore, that the act of L. G. and G. A. McKinley in fastening the dwelling-house against him was not unlawful. But the undisputed facts are that Jones had entered into the possession of the premises under a lease given by L. G. McKinley, and he never relinquished that possession until after the acts in controversy were committed. When he left the house on the day in question, he did so with the intention of returning thereto when the business which called him away was concluded. He had no intention, so far as is shown, of relinquishing possession on that day. He left his household goods and furniture in the house. Even if it be conceded that he was entitled to possess and occupy but a part of the dwelling-house, the act of the defendants in fastening the entire house against him was wrongful. They entered into possession of the premises by stealth, and acquired no right adverse to Jones by so doing. If the right of Jones to possess and occupy the property was at an end, and he wrongfully refused to surrender possession, the person entitled to it had a remedy provided by law, but he could not obtain possession rightly by the means adopted by the defendants. "A person may render himself liable to an action for forcible entry and detainer by entering upon his own premises, even when he has the right to immediate possession." *Emsley v. Bennett*, 37 Iowa, 16. It follows that the evidence excluded was immaterial, and that the action of the court in excluding it was right.

IV. The state was permitted to introduce in evidence the papers which were filed in the action for the recovery of the possession of the premises occupied by Jones, and which was pending when the offense in controversy was committed, and also the record of the case as shown by the justice's docket. It was also permitted to show that the defendant, S. J.

4. THE same.

McKinley, attempted to prevent Mrs. Jones from breaking open the door in the matter stated, by using physical force.  We think the evidence specified was properly admitted, as tending to explain the situation of Jones and the defendants, and their relation to the premises in controversy, when the assault and battery was committed.

V. Complaint is made of numerous rulings of the court, including its refusal to give instructions asked by defendants, which need not be set out at length. Some of the objections made fall within well-established rules of practice ; others relate to immaterial matters. It is sufficient for us to say that there is evidence to sustain the verdict, and that we have examined each objection made by the appellants, but without finding any prejudicial error in the record.

The judgment of the district court is AFFIRMED.