Argued 8 July, decided 3 August, 1903.

### STATE *v.* GIBSON.

[73 Pac. 333.]

PRESUMPTION OF INTENT TO MURDER—BURDEN OF PROOF.

1. The statute declaring that an intent to murder is conclusively presumed from the deliberate use of a deadly weapon causing death within a year is applicable only to cases where no circumstances of mitigation, justification, or excuse appear in evidence; while, where such circumstances do appear, the presumption is a rebuttable one, and the question of the intent to murder is for the jury, to be determined from a consideration of all the circumstances shown in evidence, the burden of proof remaining with the state throughout the proceeding.

RIGHT OF SELF-DEFENSE—NECESSITY OF RETREATING.

2. The right of self-defense being founded on necessity, the party who would invoke it must avoid the attack, if he can do so without danger to himself; but where an assault is precipitated without provocation, and is such as to indicate to a reasonable mind acting on appearances that the danger to life or the infliction of great bodily harm is imminent, the party assailed is justified in killing the aggressor, if necessary, and need not retreat or resort to expedients less violent.

From Josephine : HIERO K. HANNA, Judge.

Thos. J. Gibson appeals from a conviction of murder.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Robert Glenn Smith* and *Mr. L. Bilyeu.*

For the state there was a brief and an oral argument by *Mr. Andrew M. Crawford*, Attorney-General, and *Mr. A. Evan Reames*, District Attorney.

MR. JUSTICE WOLVERTON delivered the opinion.

The defendant appeals from the judgment of the circuit court, rendered upon his conviction of the crime of murder in the first degree, alleged to have been committed by shooting one B. Schonbacheler with a gun. The killing was admitted, and self-defense interposed as a justification. Defendant and Schonbacheler lived upon adjoining places, their dwellings being situated about one hundred and seventy-five yards apart. It was shown by defendant's testimony and admissions that in the evening of the eighteenth of April, 1902, he took his gun, and went from his house toward a crossing on Rogue River, intending to ask one Van Dorn, who lived on the other side, for the use of his boat to go down the river in order to procure his own ; that his course led him diagonally across his own premises, approaching the division line between his and Schonbacheler's, the crossing, however, being upon his own land, and that by taking this direction it was his purpose to avoid going upon or across the premises of the deceased, who had threatened his life; that he saw deceased come out of his house with a gun, and proceed down upon his side of the line fence in a southeast direction, their courses converging to a common point; that deceased was continuously in view of him, except for a short time, when he disappeared behind a little raise or knoll; that, after reappearing, he passed out in front of him, being near the line, and within one hundred yards of him, or about that, when he (defendant) called upon him to drop his gun ; that thereupon the deceased, without saying anything, whirled around, threw his gun to his shoulder, and began taking aim at him, when defendant threw up his gun,

took sight and fired, and that the deceased fell; that the defendant then started back to his house, and, after going a few steps, looked around, saw deceased moving, and heard him making a noise, when he fired again. The first shot took effect in the head, and the second in the body, either of which would have proven fatal. It was further shown that on the day previous Schonbacheler threatened that on the morrow he would blow out the defendant's brains with a shotgun, which threat was communicated to him on the morning of the tragedy. The gun which the deceased had was an old shotgun, and was lightly charged, and the accused knew the character of the weapon. There was some testimony also tending to show that the deceased had a bad reputation as being a dangerous and quarrelsome man. Other testimony was adduced, but the foregoing is sufficient to illustrate fairly the nature of the case and the conditions and circumstances under which the defendant seeks to excuse his act in taking the life of the deceased.

The court after reading the indictment to the jury, and defining the different degrees of murder, instructed them:

"There shall be some other evidence of malice than the mere proof of killing to constitute murder in the first degree; and deliberation and premeditation, when necessary to constitute murder in the first degree, shall be evidenced by poisoning, lying in wait, or by some other proof that the design was formed and matured in cold blood, and not hastily upon the occasion. You will not understand from this that it is necessary either to prove poisoning or lying in wait in this case, but there must be some proof satisfactory to your minds that the act charged was done with deliberation and premediation, in order to find the defendant guilty of murder in the first degree."

After defining the terms "deliberation," "premediation," and "malice," the court further instructed the jury:

"Certain presumptions of law are conclusive. Under

our statute the following presumptions of law are declared to be conclusive: (1) The intention to murder from the deliberate use of a deadly weapon, causing death within a year. (2) A malicious and guilty intent is presumed from the deliberate commission of an unlawful act for the purpose of injuring another."

Following these, there was an instruction as to the law of self-defense. The defendant having saved exceptions to the ruling of the court in this respect, error is assigned, and the question is presented for our determination whether the instructions were proper in view of the case made upon the evidence.

1. The instructions are practically in the language of the statute; but the statute is not applicable in every case of homicide, at least without appropriate explanation and limitations. The first instruction or statute is itself a limitation upon the second, for it confines the operation of the presumption there designated to murder of a lesser degree than the first, and it has been so construed by this court: *State* v. *Carver*, 22 Or. 602 (30 Pac. 315); *State* v. *Bartmess*, 33 Or. 110 (54 Pac. 167). See, also, *Hamby* v. *State*, 36 Tex. 523. The provision adopted by our statute that an intent to murder is conclusively presumed from the deliberate use of a deadly weapon probably comes from Mr. Greenleaf's treatise on Evidence, wherein it is announced as a rule of law that "a sane man is conclusively presumed to contemplate the natural and probable consequences of his own acts; and therefore the intent to murder is conclusively inferred from the deliberate use of a deadly weapon:" 1 Greenl. Ev. (16 ed.) § 18. This text has been severely criticised as a logical *non sequitur*, and is not now regarded as sound: 2 Bishop, Cr. Proc. (2 ed.) § 619; *Clem* v. *State*, 31 Ind. 480. "That a person intends the ordinary consequences of his voluntary act" (B. & C. Comp. § 788, subd. 3), is, by our statute, made a disputa-

ble presumption, and to deduce from it a conclusive presumption of an intent to murder from the deliberate use of
a deadly weapon seems still more incongruous and illogical
than Mr. Greenleaf's deduction from his premise. But
the legislature has made the presumption conclusive, and
therefore indisputable, and it should be given that effect
where applicable, unless contrary to natural justice. The
doctrine of the celebrated case of *Commonwealth* v. *York*,
9 Metc. (Mass.) 93, 103 (43 Am. Dec. 373), reaffirmed in
*Commonwealth* v. *Webster*, 5 Cush. 295, 309 (52 Am. Dec.
711), as interpreted by the distinguished jurist Chief Justice SHAW, in *Commonwealth* v. *Hawkins*, 3 Gray, 463, is
that, where the killing is proved to have been committed
by the defendant, and nothing more is shown, the presumption of law is that it was malicious, and an act of
murder ; but that it was inapplicable to that case, where the
circumstances attending the homicide were fully shown
by the evidence. Mr. Thompson states the doctrine thus :
"Where it is shown that a homicide was committed with a
deadly weapon, and no circumstances of mitigation, justification, or excuse appear, the law implies malice. The
malice thus implied is that malice aforethought which is
necessary to sustain an indictment for murder": 2 Thompson, Trials, § 2531. The clearest exposition of the rule we
have found is that given by Mr. Justice CAMPBELL, of the
Supreme Court of Mississippi, in the following language:
"The law presumes the accused to be innocent of the crime
charged until the contrary is made to appear; but when it
is shown that he killed the deceased with a deadly weapon,
the general presumption of innocence yields to the specific
proof of such homicide, and the law infers that it was
malicious, and therefore murder, because, as a rule, it is
unlawful to kill a human being, and is murder, if not something else; and, as special circumstances only will vary
the legal view of homicide so as to relieve it from the char-

acter of murder, it is inferred or presumed to be such from the fact of killing unexplained; but, if the attendant circumstances are shown in evidence, whether on the part of the state or the accused, the character of the killing is to be determined by considering them, and it is then not a matter for presumption, which operates in the absence of explanatory evidence, but for determination from the circumstances shown in evidence:" *Hawthorne* v. *State*, 58 Miss. 778, 787. In further support of this doctrine, see Underhill, Cr. Ev. § 320; 2 Bishop, Cr. Proc. (2 ed.) § 621; *Smith* v. *Commonwealth*, 1 Duv. 224; *Chrisman* v. *State*, 54 Ark. 283 (15 S. W. 889, 26 Am. St. Rep. 44); *State* v. *Townsend*, 66 Iowa, 741 (24 N. W. 535); *People* v. *Langton*, 67 Cal. 427 (7 Pac. 843); *Trumble* v. *Territory*, 3 Wyo. 280 (21 Pac. 1081, 16 L. R. A. 384); *Hornsby* v. *State*, 94 Ala. 55 (10 South. 522); *Erwin* v. *State*, 29 Ohio St. 186 (23 Am. Rep. 733).

The presumption of an intent to murder incident to the deliberate use of a deadly weapon is, therefore, according to these authorities, not always conclusive of the fact, and is only so when nothing else appears in evidence either to justify or excuse the act. Usually, modifying facts and circumstances are proved in connection with the killing. It might happen that a presumption of any degree is without place in the inquiry, and a development of the case may give rise to a presumption of law, based upon the killing, and the manner of its accomplishment; such as that the accused intended the ordinary consequences of his voluntary act, or that an unlawful act was done with an unlawful intent, or maliciously. Such a presumption is, from its very nature and place in the inquiry, disputable or rebuttable. To make it conclusive would be to cut off further examination as soon as the conditions suggested were developed, or render any testimony of a contrary character wholly unavailing and nugatory for any purpose.

Such was neither the intent nor purpose of the statute, and it would be a perversion of natural justice so to construe it. It was only intended to apply where the mere fact of killing with a deadly weapon deliberately used is shown, without else to modify or otherwise explain the act. Wherever, therefore, there is evidence of a tendency to rebut the presumption, whether it comes from the prosecution or the defense, it becomes a matter for the jury to consider whether it has been overcome, or is of weightier significance, so as to turn the scales of justice; and they must determine from all the evidence in the case whether the state has established the guilt of the accused beyond a reasonable doubt. A defendant is deemed innocent until he is proven guilty — a disputable presumption of law, made so by the statute (B. & C. Comp. § 788), and the state has the burden of proof unto the end. It never shifts, and the ultimate question for the jury is whether, in view of all the facts shown, the accused has been proven guilty : *Goodall* v. *State,* 1 Or. 334 (80 Am. Dec. 396); *State* v. *Huffman,* 16 Or. 15, 24 (16 Pac. 640); *Gilbert* v. *State,* 90 Ga. 691 (16 S. E. 652); *Stokes* v. *People,* 53 N. Y. 164 (13 Am. Rep. 492); *State* v. *Smith,* 77 N. C. 488. The jury, therefore, should not be instructed that an intent to murder is conclusively presumed from the act of killing by the deliberate use of a deadly weapon, unless nothing else appears in the case — no other testimony — to modify or excuse the act. But, when such other testimony does appear, they should be informed that the presumption of malice arising from the act, if it has any place in the case, may be rebutted as any other presumption deducible from the facts in evidence that the law does not make indisputable. So we conclude from these principles and deductions that the instructions complained of were inappropriate as given, and constitute error.

2. It is further insisted that the court's instructions

touching the right of self-defense proceeded upon the theory that it was the duty of the defendant to retreat if he could do so with safety, and thereby avoid the necessity of taking the life of the deceased to prevent injury to himself. It is not altogether clear that such was the theory of the trial court, yet there were some suggestions and expressions susceptible of such an interpretation. During the trial, while counsel were arguing concerning the admissibility of certain testimony as to whether the defendant could have gotten out of the way, the court remarked that "he (meaning defendant) must retreat if he can do so with safety to himself," and in the course of the instructions made use of this language:

"You will be entitled to consider the distance between the parties at the time the fatal shot was fired; the means, if any, which he may have had of retreating; and all of the other circumstances surrounding him, as shown by the evidence introduced in the case."

And, again charged the jury:

"The circumstances justifying the resort to self-defense must be such as to make it unavoidable to act otherwise. Therefore, if you believe from the evidence and beyond a reasonable doubt that the defendant in this case could have avoided a conflict without increasing the danger to himself, then I instruct you that it was his duty to avoid such conflict, and so render a resort to self-defense unnecessary; and, if he failed to do so, he could not invoke the aid of self-defense."

There being some question as to what the court really did intend to give the jury to understand in the premises, we have concluded, for the purpose of avoiding a recurrence thereof upon a new trial, briefly to indicate the rule as now established by the undoubted trend of modern authority. The right of self-defense being founded upon necessity, the party who would invoke it must avoid the attack, if he can do so without danger or peril to himself.

Hence it is that no threat to kill or inflict great bodily injury, or lying in wait, without an overt act indicating a design to carry the purpose into immediate effect, will justify the taking of human life. In such cases the attack may usually be avoided without peril, and it is the duty of the one thus threatened so to act that he will not precipitate the attack, and thus himself bring on the necessity for taking life which he could safely avoid: *State* v. *Johnson*, 76 Mo. 121; *Barnards* v. *State*, 88 Tenn. 183 (12 S. W. 431). For a much stronger reason will he not be excused where he himself seeks the affray or provokes the assault, and, when attacked, kills his assailant. The necessity for so doing is thus self-imposed, and the law does not shield or excuse his act. A person who makes a malicious assault upon another may, however, put that other resenting it in the wrong by withdrawing from the conflict, and in good faith retreating to a place of apparent safety, and then, if his antagonist pursues him and renews the encounter by an attack such as to endanger life, he may protect his own by killing his aggressor: *Stoffer* v. *State*, 15 Ohio St. 47 (86 Am. Dec. 470); *State* v. *McKinley*, 82 Iowa, 445 (48 N. W. 804). So a case is put by Mr. Justice BRONSON in *Shorter* v. *People*, 2 N. Y. 193, 203 (51 Am. Dec. 286), where a man is struck with the naked hand, and has no reason to apprehend any danger of great bodily harm, that he must not return the blow with a dangerous weapon, but must quit the conflict if he can do so with safety. This illustrates the text of 1 Bishop, Cr. Law (7 ed.), § 850, where it is said: "These cases of mere assault and cases of mutual quarrel, where the attacking party has not the purpose of murder in his heart, are those to which is applied the doctrine of the books that one cannot justify the killing of another, though apparently in self-defense, unless he retreated 'to the wall,' or other interposing obstacle, before resorting to this extreme right."

But the doctrine has no place in criminal law where the assault is precipitated without provocation, and is of such a character as to indicate to a reasonable mind acting upon appearances that the danger to life or the infliction of great bodily harm is imminent. In such case the assailed is justifiable in killing his aggressor if necessary to avert the consequences upon himself, and need not consider on the moment whether he may avert the impending danger or avoid the taking of the life of his antagonist by retreating, or resorting to some other expedient less violent. If such a course were required of him, the right of self-defense in many, if not in most, instances would prove unavailable, because in the instant of consideration or effort to avoid the.threatened injury the assailant might execute his felonious purposes. So that if a man, being upon his own premises, or in a place where he has a right to be, is assailed without provocation by a person with a deadly weapon, and apparently seeking his life, he is not obliged to retreat, or consider whether he could safely do so, but may stand his ground, and meet the attack in such a way and with such force as, under all the circumstances, he at the moment honestly believes, and has reasonable ground to believe, is necessary to save his own life or protect himself from great bodily harm: *Goodall* v. *State*, 1 Or. 334 (80 Am. Dec. 396); *Beard* v. *United States*, 158 U. S. 550 (15 Sup. Ct. 962); *Erwin* v. *State*, 29 Ohio St. 186 (23 Am. Rep. 733); *Runyan* v. *State*, 57 Ind. 80 (26 Am. Rep. 52); *Fields* v. *State*, 134 Ind. 46 (32 N. E. 780); *State* v. *Cushing*, 14 Wash. 527 (45 Pac. 145, 53 Am. St. Rep. 883); *Baker* v. *Commonwealth*, 93 Ky. 302 (19 S. W. 975).

Other errors are assigned, but as the questions involved may not arise upon a new trial, we deem it unnecessary to discuss them at this time. The judgment of the trial court will be reversed, and a new trial ordered.

Reversed.