## STATE *v.* GRAY.

79 Pac. 53.

SCOPE OF CROSS-EXAMINATION—EXAMPLE.

1. A witness who has testified on direct examination only as to being present when a certain dying declaration was made and written out, and as to his having signed it as a witness, cannot be cross-questioned as to whether the writing contained all that was said by deceased on that occasion.

INSTRUCTIONS CONSIDERED AS A WHOLE.

2. Objections to parts of a charge ought not to be sustained if, taken as a whole, the charge fairly states the law as applied to the facts of the case.

HOMICIDE—SELF-DEFENSE AFTER PROVOKING QUARREL.

3. The law of self-defense cannot be invoked by one who has provoked the fatal encounter, unless he subsequently, in good faith, endeavored to withdraw.

SELF-DEFENSE—AVOIDING DANGER—RETREATING.

4. A person at a place where he may lawfully be, if not the aggressor in a conflict, is not obliged to retreat from the assailant, but he should make such reasonable efforts to avoid taking life as are consistent with his own safety.

REFUSING INSTRUCTIONS ALREADY GIVEN.

5. It is not error to refuse to give requested instructions the substance of which has already been given.

OBJECTION TO IMPROPER BUT FAVORABLE INSTRUCTION.

6. An objection to an instruction as inapplicable to the case will not be considered where the instruction was favorable to the objecting party.

EFFECT OF INSTRUCTION AS TO USE OF DEADLY WEAPON.

7. An instruction that "an intent to murder is conclusively presumed from the deliberate use of a deadly weapon, causing death within a year, if not done in self-defense or in the rightful and necessary defense of property," did not impose on defendant the burden of showing that the killing was in self-defense.

From Union: ROBERT EAKIN, Judge.

Woodson Gray appeals from a second conviction of the crime of manslaughter.                    AFFIRMED.

For appellant there was a brief over the names of *J. D. Slater* and *Crawford & Crawford,* with an oral argument by *Mr. Slater* and *Mr. Thomas H. Crawford.*

For the State there was a brief over the names of *Andrew M. Crawford,* Attorney General; *Leroy Lomax,* District Attorney, *Samuel White* and *Neil C. McLeod,* with an oral argument by *Mr. Crawford* and *Mr. White.*

MR. JUSTICE BEAN delivered the opinion of the court.

The defendant was indicted for murder in the first degree for killing one A. M. Halgarth, in March, 1903. He was convicted of manslaughter, but upon appeal the judgment was reversed:

*State* v. *Gray*, 43 Or. 446 (74 Pac. 927). He was retried and again convicted of the same crime, and from the judgment entered thereon he brings this appeal.

There was evidence for the State tending to show that, on the morning of the killing, the defendant, accompanied by his son Wade, a lad about fourteen years of age, was going along the public highway by the deceased's house on his way to the neighboring school for the purpose of having his son, who had been suspended because of a difficulty between him and the children of the deceased, reinstated and readmitted to the school. In place of traveling in the beaten way on the north side of the road, he walked along and over the rough and frozen ground on the south side—the one nearest the house of the deceased—and while passing the house was seen to be looking in that direction, as if watching for some one. After he had passed the house a short distance, the deceased, who was in the field near by, hailed him and started toward the road fence. As he approached the fence he said: "Gray, are you going to the schoolhouse?" and the defendant replied: "I am going to the schoolhouse to clear up those s—— of b—— of lies you told the teacher." The deceased then started to get over the fence, when the defendant said, "Come on; I am fixed for you," and drew a revolver. The deceased came over the fence and started toward the defendant, saying, "I told no untruth." During all this time the defendant was cursing and abusing the deceased and his family, calling him a black s—— of a b——, a liar, and using other abusive and insulting language. After crossing the fence, the deceased continued to approach the defendant, who, in the mean time, continued his abusive and insulting language and threatening attitude, and when he got near enough he attempted to seize the arm of the defendant by which he held the revolver, but before he could do so was shot through the body by the defendant. Two or three more shots were fired in rapid succession, when the deceased grappled with the defendant, threw him down, and took the revolver from him. While he had the defendant down, endeavoring to take the revolver from him, defendant called to his son to take his knife and kill the "s—— of a b——." The boy,

in obedience to the order of his father, stabbed the deceased several times in the back, when he got up and started to move away, but, after taking a few steps, fell, and on the succeeding day died from the effects of the gunshot wound. During the difficulty the defendant said to his son: "I wish I had killed him, Wade."

1. This evidence is principally from the dying statement of the deceased, and is contradicted in many particulars by the testimony of the defendant and his son, but for the purposes of this opinion it must be taken as true. After making the necessary preliminary proof, the dying declaration of the deceased, which had been reduced to writing and subscribed by him and witnessed by the attending physician and J. T. Chandler, was admitted in evidence. Chandler was called by the State, and testified that he was present at Halgarth's house from about ten o'clock on the morning of the shooting until the deceased died, on the following day, and that he signed the dying declaration as a witness. On cross-examination he said that he was present in the room all the time while the dying statement was being reduced to writing by the physician. He was thereupon asked: "Well, now, does that statement taken down there by Dr. Whiting, does that contain all Mr. Halgarth stated there during that time?" To this question an objection was made and sustained, because it was not proper cross-examination. The court informed counsel at the time that they might make the witness their own if they so desired, but counsel refused to do so, and now insist upon the ruling as error.

The limit and scope of a proper cross-examination has been so often discussed by this court that it is unnecessary to enlarge upon the subject at this time. It has been held that it must be limited to the matter stated by the witness in his direct examination, or properly connected therewith, and that a witness cannot upon cross-examination be questioned with regard to that which does not impeach, rebut, explain, or modify, or in some way qualify, something he has testified to in chief. He can only be examined as to other matters by the examining party making him his own witness: *Goltra* v. *Penland,* 45 Or. 254 (77 Pac. 129) ; *Ah Doon* v. *Smith,* 25 Or. 89 (34 Pac. 1093) ; *State* v.

*Savage,* 36 Or. 191 (60 Pac. 610, 61 Pac. 1128); *Williams* v. *Culver,* 39 Or. 337 (64 Pac. 763). Now, the only evidence given by Chandler on direct examination was that the writing was executed by Halgarth and signed by him as witness. It was upon this subject only, or matters properly connected therewith, that he could be cross-examined. If counsel desired his testimony as to whether the dying declarations of the deceased were truly stated in the writing, they should have made him their witness for that purpose, and could not obtain the information by a cross-examination.

2. The defendant sought to justify his act in killing Halgarth upon the ground that it was done in necessary self-defense. Upon this subject the court charged, in substance, as follows:

The law gives to every man the right of self-defense. This means that a man may defend his life and person from great bodily harm. He may repel force by force, and may resort to such force as, under the circumstances surrounding him, may reasonably seem necessary to repel the attack upon him, even to the taking of the life of his assailant. If you find from the evidence that the defendant, at the time of the fatal shot or cuts, had reasonable ground to believe, and did honestly believe, that his life was in imminent danger, or that he was in danger of great bodily harm at the hands of the deceased, and not being the aggressor himself, and so honestly believing, he fired the fatal shot or inflicted the fatal wounds, he was justifiable under the law in so doing. And by "aggressor" I mean one who brings on a conflict or affray by some overt act or demonstration calculated to precipitate the difficulty or conflict.

If you find that the defendant was traveling along the public highway past the premises of deceased when the difficulty occurred, the defendant was where he had a right to be, and was not required to retreat to the wall. If a person is assaulted in such a way as to induce in him a reasonable belief that he is in actual danger of losing his life or of suffering great bodily harm, he will be justified in defending himself, although the danger be not real, but only apparent. No one has a right to kill another, even in self-defense, unless such killing is apparently necessary for such defense. Before a person can justify the taking of a human life on the ground of self-defense, he must, when attacked, employ all reasonable means within his power, consistent with his safety, to avoid the danger and avert the necessity for the killing. The right of one to take the life of an

assailant in self-defense can only be exercised to defend his own life or his person from great bodily harm. Danger of a battery alone will not be sufficient. It is not necessary that the assault made by the deceased upon the defendant, if an assault was made, should have been made with a dangerous weapon. An assault by the deceased with his fists alone, if there was an apparent purpose and the ability to inflict death or great bodily harm upon the defendant, would be sufficient to justify the killing in self-defense, if the defendant, at the time he shot and killed the deceased, had reason to believe, and did believe, that he was in imminent danger of death or great bodily harm at the hands of the deceased.

Homicide can be justified or excused on the ground of necessity alone. The necessity must be apparent, absolute, and unavoidable, or the defendant must from all the circumstances have honestly believed it to be so. To excuse homicide, the party must act under an honest and well-founded belief that it is necessary to take life to prevent death or great bodily harm to himself. The danger must be so urgent that the killing is absolutely or apparently necessary, and must not have been brought on by the defendant. Imminent and apparent danger means such overt actual demonstrations as would make the killing apparently necessary to prevent death or great bodily harm. The danger must be unavoidable according to the facts and circumstances as they honestly appeared at the time to the defendant, but it is not necessary that the danger should in fact have existed at the time, if the defendant had reason to believe, and did believe, that it existed. No words of abuse can be an excuse for assault.

Objections were made and exceptions were reserved to various portions of these instructions, but when taken as a whole they fairly cover the law of self-defense as applied to the facts of this case.

3. The objection that the court erroneously assumed that there was evidence tending to show that the defendant was an aggressor is without merit. There was testimony from which the jury could have found that the difficulty was provoked and brought on by the insulting and abusive language of the defendant, and his threatening attitude in drawing his pistol before the deceased crossed over the fence into the road. If such are the facts, he could not justify the killing on the ground of self-defense, unless, after provoking the difficulty, he in good faith endeavored to withdraw from it: 1 McClain, Crim. Law, § 310.

The rule is thoroughly established that the plea of self-defense cannot be sustained when the evidence shows that the defendant was the aggressor: *State* v. *Hawkins,* 18 Or. 476 (23 Pac. 475). He is precluded by his conduct to avail himself of a necessity arising from a present impending peril of great bodily harm brought on himself by his own wrongful act.    Sergeant Hawkins says: "Neither shall a man in any case justify the killing of another by a pretense of necessity, unless he were himself wholly without fault in bringing the necessity upon himself; for if a man, in defense of an injury done by himself, kill any person whatsoever, he is guilty of manslaughter at least": 1 Hawkins' Pleas of the Crown, c. 10, § 22.    And Mr. Wharton says:    "If the defendant in any way challenged the fight, and went to it armed, he can not afterwards maintain that in taking his assailant's life he acted in self-defense": 1 Wharton, Crim. Law (9 ed.), § 485.    In order for a defendant to invoke the law of self-defense, he must be free from fault, and the difficulty must not have been one of his own seeking.    Insulting and abusive language may be sufficient to provoke and bring on the difficulty within this rule, unless, perhaps, the assault is so violent as to be out of all proportion to the provocation given, and especially is this true when, as here, such language is accompanied by the drawing of a deadly weapon with an apparent hostile intent: 1 McClain, Crim. Law, § 309; Kerr, Homicide, §§ 178, 179; *Henry* v. *State,* 79 Ala. 42; *State* v. *Hudson,* 59 Mo. 135; *State* v. *Talmage,* 107 Mo. 543 (17 S. W. 990); *State* v. *Trammell,* 40 S. C. 331 (18 S. E. 940, 42 Am. St. Rep. 874).    There is some language in *Foutch* v. *State,* 95 Tenn. 711 (34 S. W. 423, 45 L. R. A. 687), the case relied upon by the defendant, which would seem to imply that to deny one who provoked a difficulty, in which his adversary is killed by him, the right to plead self-defense, it must appear that he brought on the difficulty with the intent to kill his adversary or inflict on him great bodily harm. The question for decision in that case, however, was the soundness of an instruction that "if one provokes a combat or produces an occasion to kill, and kills his adversary, it is murder, no matter to what extent he (the slayer) may have been reduced in the

combat." The court held the instruction erroneous, because the
killing would not be murder, under the circumstances stated, un-
less the difficulty was provoked by the slayer with the intent to
kill his adversary or to do him great bodily harm. What is said
upon the law of self-defense can scarcely be regarded as au-
thority.

4. It is urged that the instructions are erroneous because the
court told the jury that, before a person can justify the taking
of a human life on the ground of self-defense, "he must take and
employ all reasonable means within his power, consistent with his
safety, to avert the danger and avoid the necessity for the kill-
ing," and that "the danger must be unavoidable, according to the
facts and circumstances as they honestly appeared at the time to
the defendant," etc. These instructions are merely the lan-
guage of the books and decisions, and, when construed in con-
nection with the remainder of the charge, it is clear the court did
not intend to instruct the jury that it was the duty of the de-
fendant, if he was without fault, to retreat or flee from his ad-
versary in order that he might justify the killing on the ground
of self-defense. On the contrary, the court plainly charged that,
if the defendant was traveling in a public highway, he was where
he had a right to be, and was not required to retreat; that, if he
was assailed in such manner as to induce in him a reasonable
belief that he was in actual danger of losing his life or of suf-
fering great bodily harm, he would be justified in defending him-
self, although the danger was not real, but only apparent; that
it was not necessary that the assault should have been made by
deceased with a dangerous weapon, but that his fists alone were
sufficient, if there was an apparent purpose and present ability
on his part to inflict death or great bodily harm, and the de-
fendant had reason to believe and did so believe; that it was only
necessary that the danger be unavoidable according to the facts
and circumstances as they honestly appeared at the time to the
defendant. The effect of these instructions as a whole is that
while the defendant, if he was not the aggressor, was not obliged
to retreat or fly from his assailant, it was his duty to employ all
reasonable means within his power, consistent with his own

safety, to avoid the danger, and avert the necessity of taking the life of the assailant. This is the law, and was so stated in the former opinion: *State* v. *Gray,* 43 Or. 446 (74 Pac. 927) ; *State* v. *Porter,* 32 Or. 135 (49 Pac. 964) ; 1 McClain, Crim. Law, § 311; Kerr, Homicide, § 180; *State* v. *Sumner,* 74 S. C. 32 (74 Am. St. Rep. 707, note).

Complaint is also made because it is said the court gave too much prominence in its charge to the fact that the defendant must not have been the aggressor, and must not have brought on the difficulty, etc.; but this is owing to the prolixity of the charge, due, probably, to the numerous instructions requested by the parties, and the evident earnest desire of the court to present the law of the case fully and clearly to the jury.

5. Again, it is insisted that the court confused "justifiable" and "excusable" homicide, but these terms are often used as synonyms in the books: 1 McClain, Crim. Law, § 296. No injury could have come to the defendant by their use in the case at bar. Several instructions were requested by the defense to the effect that the defendant had a right to act upon appearances, and to repel the assault of the deceased, whether it was made with a deadly weapon or not; that no person has a right to advance into a public highway and administer a merciless castigation upon his neighbor who is lawfully there, and that a strong man with his fists alone is capable of inflicting great bodily harm upon a victim much inferior in strength and endurance, and he may even thus take his life; and that in arriving at a verdict they should take into consideration the relative sizes, ages, and strength of the parties; but all these points were sufficiently covered by the general charge, and there was no error in refusing to give the instructions as requested.

6. Preliminary to its charge as to the law applicable to the facts of the case and as introductory thereto, the court stated to the jury what would constitute excusable homicide as defined by the statute (B. & C. Comp. § 1758), and that "an intent to murder is conclusively presumed from the deliberate use of a deadly weapon, causing death within a year, if not done in self-defense or in the rightful and necessary defense of property."

Objections are made to both of these instructions on the ground that the first is outside the testimony, and the second imposed the burden of proof upon the defendant of showing that the killing was in self-defense. It is a rule of law that an instruction upon a matter not in evidence, if prejudicial to the party complaining, is reversible error, but the definition here given of excusable homicide was favorable to the defendant. If any inference was to be drawn therefrom, it was that, in the opinion of the court, there was some evidence tending to show that the defendant was entitled to an acquittal on the ground that the killing was excusable under the statute, and therefore he has no right to complain.

7. The other instruction was merely stating to the jury a presumption of law declared by the statute as interpreted by this court in previous decisions, and did not, as we conceive it, in any manner shift the burden of proof: *State* v. *Carver,* 22 Or. 602 (30 Pac. 315) ; *State* v. *Gibson,* 43 Or. 184 (73 Pac. 333). It was an instruction which had no proper place in a trial for manslaughter, but was not prejudicial to the defendant, nor did it affect any substantial right of his.

The court at the beginning of its charge told the jury that the former verdict was an acquittal of the crime of murder in the first or second degree, and that the defendant could not on a retrial be convicted of any greater offense than manslaughter. The case was tried thoughout by the State and the defense as a prosecution for manslaughter alone, and evidence was admitted and instructions of the court framed on that theory. The cause was properly and fairly submitted to the jury, and should not now be reversed because the court improperly alluded to or stated a statutory rule of evidence which was not applicable to the case, but which could not have affected the substantial right of the defendant: B. & C. Comp. § 1484; *State* v. *Moore,* 32 Or. 65 (48 Pac. 468).

The judgment of the court below is affirmed.　AFFIRMED.