Argued May 16, reversed and remanded for further proceedings August 25, petition for rehearing denied September 26, 1972, petition for review denied January 17, 1973

STATE OF OREGON, *Appellant*, *v.* CHARLES EDWARD EVANS (Nos. 40364, 40410), *Respondent.*

500 P2d 470

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for respondent.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Two indictments were returned against defendant. The first accused him of assault with a dangerous weapon and pointing a firearm at another. Former ORS 163.250, 163.320. The second accused him of being a convicted felon in possession of a concealable weapon. ORS 166.270. Defendant moved to suppress the weapon involved in these charges and also testimony concerning it on grounds that both were products of an unlawful search and seizure. The trial court allowed the motion only as to the weapon. The state appeals pursuant to ORS 138.060 (4).

Shortly before noon on September 28, 1971, State Police Officer Cofer, stationed in Albany, re-

ceived information from the Salem State Police office that defendant had escaped from the Oregon State Penitentiary and that he might be at the home of Mr. and Mrs. Putnam in Sweet Home. Officer Cofer with several other officers went to the Putnam residence. Officers Cofer and Rissman went to the front door and knocked. Mrs. Putnam, the defendant's mother, opened the door, and after the officers had identified themselves, she voluntarily admitted them. Once inside the house, Officer Cofer asked Mrs. Putnam if defendant was there. She indicated that he was and gestured toward a sliding bedroom door which was partially open. Officers Cofer and Rissman stepped to the door and Officer Cofer slid it open. Both officers saw defendant in the bedroom with a revolver in his hand.

Officer Cofer immediately shut the bedroom door, backed away and warned the officers outside that defendant was armed. At this point, Mr. Putnam, who had been in the house when the officers originally entered, undertook to talk to the defendant. He went into the bedroom and shortly thereafter emerged with defendant, who was unarmed and held his hands out in front of him to indicate he had no weapon. The defendant was patted down, handcuffed, and then taken outside and placed in Officer Cofer's patrol car. Thereafter the police officers went back into the house to pick up the gun. The trial court found that the original entry of the officers was lawful because Mrs. Putnam consented to their entry. However, the court then found that their return to the house to pick up the gun after they had secured the defendant in the police car was unlawful because, the court found, Mrs. Putnam merely followed them into the house and did not consent to their return.

The testimony concerning the re-entry was as follows: Officer Cofer testified that "a short period of time later" he went into the bedroom from which defendant had emerged and saw a loaded .357 Ruger revolver, which Rissman ultimately took into custody, "lying on the bed." Rissman testified that after defendant had been taken outside

"\* \* \* I then went outside myself and after the situation was taken care of I came back and asked Mrs. Putnam if I could have the gun and she said, 'Yes'. She didn't want it and she and I both walked into the bedroom and at the time I walked in I did not know exactly where it was but between the two of us we located the gun on the bed."

Mrs. Putnam testified that, following defendant's arrest, while everyone was outside the house, Rissman said he was going to take the revolver and walked back into the house to get it; that she did not give him permission to go back inside; that she followed him inside; and that the weapon was lying on the bed in her bedroom, which was a room beyond the bedroom in which defendant had been standing, but which had no door separating it from defendant's room.

The trial court by its finding concluded that the officers who arrested defendant originally had a right to seize defendant's revolver incident to his arrest, but they did not have the right to do so after defendant had been placed in the police car. We do not agree. The effect of the ruling is to say that once a police officer walks out the door of a residence with a person in his custody, he cannot re-enter the residence in order to seize a weapon seen in the arrestee's possession moments before unless he obtains a search warrant or unless he receives express permission to

re-enter the premises from the occupants. It does not square with common sense that the arresting officer must abandon the gun at this juncture until he obtains a search warrant.

■ The trial court properly found that the original entry of the Putnam's house was lawful. We believe that the arrest of the defendant and the placing of him in the police car and the re-entry of the house to obtain the revolver which the police had seen in the defendant's hand moments before were all part of a continuous transaction and that the seizure of the revolver was therefore incident to defendant's arrest. *See State v. Elk*, 249 Or 614, 620-22, 439 P2d 1011 (1968). The fact that the arresting officers saw primarily to the custody of the defendant in the police car before either of them re-entered the house to get the revolver does not affect the legality of its seizure incident to the arrest. The trial court's finding that "[c]onsiderable time elapsed" is not supported by any evidence in the record. Indeed, the trial court originally noted in its memorandum opinion that "* * * [t]here was no evidence as to how much time had elapsed. * * *"

■ Whether or not the defendant's mother affirmatively consented to Officer Rissman's re-entry of the house is immaterial. The record contains no evidence whatever that she attempted to revoke the permission she had previously given the police to enter and arrest defendant. In the absence of any express revocation of the consent which the mother had previously given, that consent continued through the seizure of evidence incident to defendant's arrest, when, as here, that seizure was a part of the continuous sequence of the arresting process.

■ This case is distinguishable from the case cited by the trial court in its memorandum opinion, *State v. Brothers,* 4 Or App 253, 478 P2d 442 (1970). There the officers arrested defendant, locked his premises, and then went back two and one-half hours later to make a warrantless search. The present case involves an immediate seizure of evidence known to be on the premises occupied by persons related to and friendly to the defendant, in whose home he was being harbored as an ex-convict, who are not in custody and who, so far as the officers knew, might be inclined to prevent its subsequent seizure by the police. Under such circumstances it was reasonable and proper for the police to seize the weapon as they did. *See State v. Keith,* 2 Or App 133, 141-43, 465 P2d 724, Sup Ct *review denied* (1970).

Reversed and remanded for further proceedings.

FORT, J., dissenting.

Two indictments were returned against defendant. The first accused him of assault with a dangerous weapon and pointing a firearm at another. ORS 163.250, 163.320. The second accused him of being a convicted felon in possession of a concealable weapon. ORS 166.270. Defendant moved to suppress the weapon involved in these charges and all testimony concerning it on the ground that both were products of an unlawful search and seizure. The trial court allowed the motion only as to the weapon. The state appeals, pursuant to ORS 138.060 (4).

Upon review of a motion to suppress, the findings of the trial court if supported by substantial evidence are binding on this court. *See: City of Oakland v. Moore,* 1 Or App 80, 457 P2d 659, Sup Ct *review*

*denied* (1969); *State v. Nasholm,* 2 Or App 385, 467 P2d 647, Sup Ct *review denied* (1970). Here the trial court made extensive findings of fact which meet this test.

In its sole assignment of error, the state contends that the trial court erred in allowing defendant's motion to suppress the revolver seized by the police, because it was properly seized incident to a lawful arrest of defendant.

Relying on *Chimel v. California,* 395 US 752, 762, 89 S Ct 2034, 23 L Ed 2d 685 (1969), this court, in *State v. Keith,* 2 Or App 133, 141-42, 465 P2d 724, Sup Ct *review denied* (1970), stated:

"* * * *Chimel* * * * tells us * * * the police may search without obtaining a warrant if there is probable cause to search and if, under the attendant circumstances of the particular situation, the police have probable cause to believe that immediate search without a warrant is necessary: (a) to protect the safety of an arresting officer or bystander, or (b) to avoid the loss of evidence."

In *Coolidge v. New Hampshire,* 403 US 443, 456, 91 S Ct 2022, 29 L Ed 2d 564 (1971), the court said:

"* * * [E]ven under *Rabinowitz,* '[a] search may be incident to an arrest " 'only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest ....' " ' [Citations omitted.] These cases make it clear beyond any question that a lawful pre-*Chimel* arrest of a suspect outside his house could never by itself justify a warrantless search inside the house. * * *"

The state has the burden of proving that a warrantless search and seizure is proper as incident to a lawful arrest. *State v. Roderick,* 243 Or 105, 108-

09, 412 P2d 17 (1966). In the case at bar the trial court found:

"The remaining question is whether Officer Rissman had the right to re-enter the Putnam house and search for the gun. At the time he decided to do this, the defendant was safely handcuffed in a patrol car, his own car in the driveway had been searched, and everyone was out of the house and in or around the yard. There was no evidence as to how much time had elapsed. * * *

"* * * * *

"The State had the burden of establishing that the search without a warrant was necessary to avoid the loss of evidence. The court finds that the State has failed to establish its burden in this respect. This is a case involving the search of the private home of another, not the defendant, after the defendant had been arrested and removed from the house. *State vs Laundy,* 103 Or 443."

In its suppression order the court concluded:

"* * * * *

"8. After the defendant had been handcuffed, and removed from the house, to the police patrol car, * * * the re-entry and search was purely an afterthought, and was not incident to the arrest.

"* * * * *

"11. There was no probable cause for Officer Rissman to believe an immediate search without a warrant was necessary in order to protect himself or others in the vicinity, or in order to prevent the defendant's escape. *State v. Keith,* 2 Or App. 133.

"* * * * *

"13. Officer Rissman had no probable cause to believe that the revolver would be lost unless he made an immediate search of Putnams' residence (not the defendant's) without a warrant.

"* * * * *"

Since the court's findings were supported by substantial evidence, it follows, in my view, that the judgment should be affirmed. Accordingly, I respectfully dissent.