Argued and submitted June 17, 1981, resubmitted In Banc January 10,
affirmed May 11, reconsideration denied July 7,
petition for review allowed September 7, 1983 (295 Or 617)
See 296 Or 1, 672 P2d 691 (1983), rehearing denied January 10, 1984

# STATE OF OREGON,
*Respondent,*

*v.*

# ORVILLE JOHN LUTHER,
*Appellant.*

(C79-04-31252; CA 17011)

663 P2d 1261

Des Connall, Portland, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Deputy Solicitor General, Salem.

BUTTLER, J.

Warden, J., dissenting.

## BUTTLER, J.

Defendant appeals his conviction for second-decree manslaughter. He assigns error to the trial court's (1) failure to suppress evidence obtained by a search, (2) admitting the testimony and limiting cross-examination of a previously hypnotized witness and (3) refusing defendant's requested instructions on self-defense. We affirm.

On the evening of April 13, 1979, defendant called police to report that his nephew, Mark Luther, had suffered a gunshot wound in an attempted suicide at the rooming house where both defendant and Mark lived. Defendant's mother, Gena Luther, owned the house and let rooms on the top two floors. Defendant and Mark had rooms on the second floor across a hall from each other. On arriving at the house, officers Wong and Jimmerfield found defendant on the second-floor landing just outside Mark's room, bending over him and holding a compress to Mark's head.

The officers asked defendant where the gun was. Defendant first nodded toward Mark's room and said, "It's in there." Wong searched the room but found no gun. He asked again, and defendant indicated his own room, the door to which was then open. Wong looked in but did not enter. Instead, he went to help the ambulance crew, which had just arrived, remove Mark. Wong had not seen a gun. Defendant said, "I don't know where I threw the gun."

After the ambulance attendants had left defendant and Jimmerfield went into defendant's room. According to Jimmerfield, defendant invited him to come in and at no time objected to his presence. Jimmerfield believed at that time that he was investigating a suicide. He observed a revolver in a holster on the floor. Defendant told him that the gun was defendant's old service revolver[1] and that it had not been used in the shooting.

Jimmerfield then left defendant alone in his room and went downstairs to speak with Gena, who told him that defendant had shot Mark. Meanwhile, Wong saw defendant enter his room and close the door behind him. Wong knocked and told defendant that he needed to see the gun. Defendant came

---

[1] Defendant is a former deputy sheriff.

out and closed the door behind him. Defendant then tried to re-open the door, but it was locked. When Wong asked him who had a key, defendant said that his mother did, so Wong had a third officer go downstairs to get it. Key in hand, Wong asked defendant if it was the right one, and defendant said that it "looked like it." Wong believed that he was investigating a suicide and that defendant was consenting to his entering the room. Either Wong or a third officer, Walch, then opened the door, and Wong entered.

About the time Wong walked into defendant's room, Jimmerfield, having heard that defendant had shot Mark, came back up the stairs, advised defendant of his *Miranda* rights, arrested him and escorted him downstairs. Without a warrant, Wong searched the room during the same time. When he saw a metal object between a travel bag and a love seat, he lifted the bag, and the gun fell to the floor. Wong did not remove the gun, but waited for detectives to do so after their arrival five or ten minutes later. Shortly thereafter, detective Newman had the gun photographed and delivered to crime laboratory personnel.

The court denied defendant's motion to suppress the gun and made special findings. The warrantless search and seizure process here, as in *State v. Evans,* 10 Or App 602, 500 P2d 470 (1972), *rev den* (1973), involved not only a seizure incident to arrest, but an initial consensual search, the absence of an express revocation of that consent before the re-entry, evidence in plain view and exigent circumstances.

The question here is limited to the effect of the few minutes' delay between the initial search and the seizure, during which defendant closed the door to his room. There is no question but that the police officers could properly have seized the gun during the initial search while they were present with defendant's consent and in response to the emergency call. Absent express revocation of an initial consent, *i.e.,* absent objection to a subsequent, closely related entry and search after the initial consensual entry and search, the permitted inference is that the initial consent continued. That, in essence, is what we held in *Evans;* it is precisely what the Alaska Supreme Court held in *Phillips v. State,* 625 P2d 816, 817 (Alas 1980). We do not construe defendant's act of closing the door as a revocation of consent, because defendant tried to

open the door himself, told a police officer that his mother had a key and made no objection to the police obtaining the key or opening the door. The motion to suppress was properly denied.

Defendant's next four assignments of error relate to various attempts by defendant to attack the testimony of Gena's post-hypnotic testimony. In general, defendant contends that her testimony should have been excluded as contrary to the physical facts; that hypnotically induced testimony is *per se* inadmissible, and that defendant should have been allowed to present "evidence to the jury regarding the details of the hypnosis." Defendant consolidated his argument on those issues, and by so doing has tended to blur them, particularly with respect to whether the issues were properly preserved in the trial court. We treat them separately after setting forth the background out of which they arise.

Defendant was indicted first on June 13, 1979, for assault. When Mark died four months later, that indictment was dismissed, and defendant was indicted by a second grand jury for murder.

Defendant's defense at trial was self-defense. He testified that he and Mark had quarreled in Mark's room, that he then went into the hall, heard Mark threaten to kill him and heard Gena say to Mark, "If you have a knife there, give it to me or put it away." As defendant went to his room and got a gun, Gena started downstairs. Defendant testified that he had taken the gun to Mark's room to scare him, but that Mark had grabbed the gun, which discharged in the ensuing struggle, wounding Mark.

Gena's versions of the events differed from defendant's and from one another. First she told the police that she had seen the shooting and that defendant and Mark were standing in their respective doorways — about seven feet apart — when the shot was fired. She testified before the first grand jury, but the record indicates that that testimony was not reported, so it was not disclosed to defendant, and we do not know whether the first version she gave to police was the same as the one she gave to that grand jury. After Mark died, Gena testified before the second grand jury. That testimony was reported and was made available to defendant. She told the second grand jury that she was on her way down the stairs and did not see the shooting. At trial, she admitted that she had "gotten emotional" and lied to the second grand jury.

After her second grand jury appearance and before trial, Gena was hypnotized, apparently by a qualified hypnotist, at the prosecutor's request. The prosecutor and his investigator, Robert Bitter, were present during the hypnosis session, and it was videotaped.[2] Bitter asked the questions. He knew that Gena had given inconsistent versions of what she had seen and the location of defendant and Mark at the time the gun discharged. He was also aware of "a disparity" between Gena's first version and information from police lab reports. He wanted "to ask her if she recalled them being closer together," although he denied trying to influence Gena to remember defendant and Mark to have been close together. He did, however, ask the hypnotized Gena several questions about defendant's distance from Mark.

At trial, Gena testified that defendant was three feet from Mark when the gun discharged. She denied having ever related anything inconsistent with that version, except for her testimony to the second grand jury.

The physical evidence, according to the expert witnesses, indicated that the weapon discharged no more than three feet from Mark. The evidence included blood spatters on the door to Mark's room, a hole in the ceiling believed to have been caused by a bullet, and powder burns on Mark's head. In the opinion of the state's criminalist, Mark was shot while in or close to the doorway and looking out, and the bullet had travelled upward.

■ Defendant's second assignment is that the trial court erred in not allowing defense counsel to introduce evidence regarding what Gena said or did while under hypnosis and what type of questions were asked of her. When defense counsel asked the witness whether she had been put under hypnosis, the state objected. The trial court ruled that, first, defendant could inquire whether she had been subjected to hypnosis after her appearance before the second grand jury and whether that changed her recollection of what occurred and, second, he could also show the difference between the story she told

---

[2] Although the videotape was admitted for purposes of defendant's pretrial motion to exclude Gena's testimony, but not as evidence at the trial, we have not viewed it; neither had the trial judge at any time before he ruled on the motion for a new trial. We rely here, as did the trial judge, on defense counsel's description, the state's lack of objection to that description and Bitter's and Gena's testimony.

before hypnosis and the story she told at trial. The court indicated that it was not going to permit any evidence regarding what occurred while the witness was under hypnosis. Defense counsel then asked whether he could make a record on that, to which the trial judge responded, "Surely."

Counsel then stated that he understood the court's ruling and that he would make a record "sometime before the jury comes back." He never did. The Supreme Court has stated that it is doubtful whether an offer of proof is required where an objection is sustained on cross-examination, *Shepler v. Weyerhaeuser Company,* 279 Or 477, 569 P2d 1040 (1977), and in the cases which have held that it was not necessary (*Arthur v. Parish,* 150 Or 582, 47 P2d 682 (1935), *Beemer v. Lenske,* 241 Or 47, 402 P2d 90 (1965), and *State v. Davidson,* 252 Or 617, 451 P2d 481 (1969)), we are told what question was asked that the court ruled could not be answered. Here, objection was made to the question whether Gena had been put under hypnosis. The court's ruling would have permitted Gena to answer that question, but counsel did not pursue it. We do not know what additional questions would have been asked. Assuming that a witness who has been hypnotized is competent to testify as to what occurred while he was under hypnosis, the threshold question is whether the witness states that he knows what happened. If he says he does not remember, that is the end of the matter. Because Gena was not asked, either before the jury or as an offer of proof, whether she knew what happened, we cannot tell whether the court's ruling, assuming it to have been erroneous, was prejudicial.

■ The third assignment of error is that the trial court erred in denying defendant's pretrial motion to prohibit the testimony of Gena or, in the alternative, to limit her testimony. The grounds for that written motion were that her "testimony would be contrary to physical fact and highly prejudicial to the defendant." The alternative was that Gena be limited to testifying to matters which were not contrary to physical fact. The memorandum in support of that motion contended, first, that "[w]here testimony of a witness is contrary to physical fact, the court should prohibit such testimony." It then asserted that Gena's testimony "is contrary to physical fact and scientific evidence." Second, it contended that the investigator and the district attorney attempted to alter the beliefs of Gena while she was under hypnosis, and, as

a result, "her testimony may not be of facts derived from her own perceptions as required by ORS 44.060." On this point, the memorandum concluded:

> "The investigator and District Attorney attempted to conform Gena's testimony to physical fact, which it does not. This indicates that not only is her testimony incompatible with physical fact, but also that the district attorney is fully aware of this fact."

At oral argument on the motion, defendant reiterated those points and went on to contend that the hypnotic session was an attempt to cause Gena to change her testimony to be in accord with the physical evidence, and that defendant did not

> "* * * know now what she is recalling, whether she is recalling what she thinks she saw or whether she is recalling what she thinks she saw under the suggestion of hypnosis."

At that point, defense counsel stated that he would like to be able to take some testimony on that, to which the court responded "Surely." Defense counsel asked for "a moment" and then stated,

> "I will not put on testimony on that, Your Honor. I would like to put on testimony regarding the impossibility of Mrs. Luther's proposed testimony since it's totally [contrary] to physical fact and scientific evidence."

There was some discussion concerning the videotape of the hypnotic session, which defense counsel had had the opportunity to review. The district attorney stated that there was never any attempt to try to change or alter Gena's testimony through hypnosis, but he stated that the state was not planning to offer the videotape. Defense counsel stated that the tape would speak for itself, and requested that it be marked as a defense exhibit and "become a part of the file of this case — not for submission to the jury but for the record."

The court directed that it be made a part of the record "— not for submission to the jury at this time." The court then denied defendant's motion to prohibit or limit Gena's testimony, stating:

> "Well, in any event, the Motion will be denied at this point. You may have, of course, as I said earlier an opportunity to renew that Motion after the witness has testified, if there is any reason to indicate that it might have some values for impeachment purposes."

There was no error in the denial of that motion.

We find nothing in the record to indicate that defendant, at any time during the trial, offered in evidence the videotape of the hypnotic session involving Gena. It may be inferred reasonably from the record that defendant wanted the trial judge to review the videotape in connection with his pretrial motion to prohibit Gena's testimony, apparently for the purpose of showing that Gena had given inconsistent stories and that the state, through hypnosis, had induced her to change her testimony to "conform to the physical facts, which it does not." For that reason, defendant contended, the testimony should be prohibited. The trial judge did not review the videotape, but no error is assigned on that ground.

The question came up again on defendant's motion for a new trial, denial of which is the basis for defendant's fifth assignment of error. That motion was based, among other things, on the ground that the prosecutor committed misconduct by "hypnotizing Gena Luther in attempting to conform her testimony to his desired version of the facts, contrary to physical evidence of which he had knowledge" and "introducing testimony he knew was contrary to physical facts." In his memorandum in support of those contentions, the defendant distinguished *State v. Jorgensen,* 8 Or App 1, 492 P2d 312 (1971), *rev den* (1972). He stated that *Jorgensen*

> "* * * held that the fact that one of the state's witnesses had been subjected to hypnosis for memory restoration purposes prior to trial did not render her testimony inadmissible. The state offered psychiatric testimony that the woman had suffered a loss of memory of the whole affair as a result of the trauma produced by the crimes, but that her amnesia had been corrected and her memory restored by a series of psychiatric interviews, which included hypnosis. Her testimony was held admissible because she was subject to cross-examination and her pretrial hypnosis was disclosed to the defendant."

Defendant did not contend that *Jorgensen* was wrong. The distinction he urged was:

> "In this case, Gena Luther's testimony based upon her memory which was 'restored' and induced through pretrial hypnosis, was contrary to physical evidence."

During argument on the motion, the court was asked to view the videotape, which could not then be located. Because the time for ruling on the motion was about to expire, the court did not have an opportunity to view the tape.

From the foregoing recitation of all that we can find in the record relating to the hypnosis question, we conclude that defendant never contended that Gena Luther's testimony was not admissible solely because she had been hypnotized. Further, because defendant did not make a record of whether Gena knew what occurred while she was under hypnosis after the trial court limited defense counsel's examination of Gena, we cannot say, if the trial court erred, that it was prejudicial error.

Under *State v. Jorgensen, supra,* if defendant, during trial, had offered the videotape of the hypnotic session, it should have been admitted for the purpose of showing, as defendant contended, that Gena was persuaded to change her testimony from what it was before the second grand jury and what it was at trial. He did not do so. Instead, he elicited the facts that Gena had given different versions at different times as to what she observed or did not observe at the time of the killing and that she had been hypnotized after she testified at the second grand jury. She admitted that her statement to the second grand jury that she did not see the shooting was not true and that she so testified to protect the defendant, who is her son. Defendant's counsel had reviewed the videotape of the hypnotic session, and it is at least reasonable to conclude that he made a tactical decision to impeach her by relying on her prior inconsistent statements and her admittedly having lied to the second grand jury, rather than to offer the videotape for the jury to see for itself how it was handled.

The *Jorgensen* rule was recognized by the legislature six years after that decision when ORS 136.675[3] was enacted. That statute requires, as a condition to the use of testimony of a person who has been subjected to hypnosis, that "the entire procedure be recorded either on videotape or any mechanical

---

[3] ORS 136.675 provides:

"If either prosecution or defense in any criminal proceeding in the State of Oregon intends to offer the testimony of any person, including the defendant, who has been subjected to hypnosis, mesmerism or any other form of the exertion of will power or the power of suggestion which is intended to or results in a state of trance, sleep or entire or partial unconsciousness relating to the subject matter of the proposed testimony, performed by any person, it shall be a condition of the use of such testimony that the entire procedure be recorded either on videotape or any mechanical recording device. The unabridged videotape or mechanical recording shall be made available to the other party or parties in accordance with ORS 135.805 to 135.990."

recording device." The statute also requires that the videotape or recording be made available to the other party. It seems obvious that the purpose of the requirement is to give the other party an accurate record of what occurred to permit an attack on the credibility of the witness by showing the jury what was done with the witness during the hypnotic session.

■    In his sixth assignment, defendant contends that the trial court erred in denying discovery of Gena's testimony before the first grand jury. The portion of the transcript set out under this assignment occurred at the hearing on defendant's motion for a new trial when defendant was attempting to show prosecutorial misconduct by "introducing testimony he knew was contrary to physical facts." The assignment does not comply with ORAP 7.19, and we will not consider it.

We note that there was a written pretrial motion to compel discovery of Gena's testimony "before the grand jury," without indicating which one. From the record of the hearing on that motion, it is not clear whether the motion related to testimony before more than one grand jury. Defendant contended that he was entitled to that discovery, "the only question would be when," which he supposed was discretionary with the court. The trial court denied the motion at that time with the understanding that, if a witness were to testify at trial who had testified before the grand jury, "I might have to review it." The record reflects that at the time of trial, after jury selection was completed, the state turned over to defense counsel Gena's "grand jury testimony."

The issue did not arise again during trial, and Gena was not asked on cross-examination what she told the first grand jury. In his motion for a new trial, defendant did allege denial of that discovery as a ground; he only asserted prosecutorial misconduct, in, among other things, failing to provide defendant with Gena's testimony before the grand jury until after the trial had begun.

■    Lastly, defendant assigns error to the trial court's refusal to give his requested instructions on testimony contrary to physical facts[4] and on self-defense, particularly as to provocation and duty to retreat.

---

[4] Defendant asserts the error as his fourth assignment; we consider it out of order to avoid breaking up the discussion of related assignments.

Defendant submitted a detailed instruction relating to testimony contrary to physical facts. From our review of the instructions given, we conclude that they covered adequately the essence of defendant's requested instruction, and the jury was specifically told that "a finding cannot be based upon evidence which is opposed to established physical facts." There was no error.

The court instructed on self-defense by reading Uniform Jury Instructions 403.11 (defense of person), applicable portions of 403.13 (use of deadly physical force in defense of a person), ORS 161.015(3) (deadly physical force), 161.015(7) (serious physical injury), 161.055(1) (state's burden to disprove self-defense), 161.209 (use of physical force in defense of a person) and applicable portions of 161.219 (limiting use of deadly physical force). The court added a brief statement defining "reasonable belief" as that of an ordinary person in defendant's situation and a brief statement contrasting accident with intent or recklessness.

The court did not instruct specifically on provocation or aggression. *See* ORS 161.215 and Uniform Jury Instruction 403.12. Defendant submitted three instructions on those limitations to self-defense but assigns error only to the court's failure to give a lengthly instruction on provocation, distinguishing defendant's threat of force from use of force. The requested instruction included impermissible comments on the evidence and invaded the province of the jury. The court did adopt much of the requested instruction to the effect that the jury had to consider defendant's mental state as it was only at the "precise moment" the gun discharged, *i.e.,* at the time of *use* of force or of accidental discharge. The requested instruction was partially redundant and would have obfuscated, not clarified, the issue for the jury and the jury's responsibility. The court's instruction focused the attention of the jury on its task and required no further clarification.

Defendant also requested an instruction on duty to retreat, based on *State v. Gray,* 46 Or 24, 79 P 53 (1905); *State v. Rader,* 94 Or 432, 186 P 79 (1919); and California Jury Instruction - Criminal No. 5.50. The court refused that instruction in favor of reciting ORS 161.209 and 161.219. Nothing in the court's instructions implied a duty to retreat. Without determining whether defendant's requested instruction was an accurate statement of the law, we conclude that the

court's general instructions covering self-defense were adequate. *See State v. Charles,* 293 Or 273, 647 P2d 897 (1982).

Affirmed.

**WARDEN, J.,** dissenting.

The majority says that the trial court did not err in limiting defendant's cross-examination of the state's witness, Gena Luther, who, after testifying before the grand jury and before trial, was questioned by the District Attorney's investigator while she was in a hypnotized state. The majority has concluded that it was not error for the trial court to limit the defendant's cross-examination of Gena with regard to the hypnotism. Because I disagree, I respectfully dissent.

When defendant's counsel asked Gena Luther, "After that appearance before the Grand Jury, did [counsel for the state] have you put under hypnosis?," the state objected. After some colloquy outside the presence of the jury, the court ruled:

> "*All you are entitled to show is the difference between the story she told before and the story she tells later,* but I am not going to permit any evidence to be presented before the jury regarding what occurred during * * * while the time she was under hypnosis." (Emphasis supplied.)

With that ruling the trial court foreclosed any further cross-examination of the witness regarding what had occurred at the time of the hypnosis.

The majority concludes that there was no error, because defendant did not make an offer of proof. The majority goes on to say:

> "* * * We do not know what additional questions would have been asked. Assuming that a witness who has been hypnotized is competent to testify as to what occurred while he was under hypnosis, the threshold question is whether the witness states that he knows what happened. If he says he does not remember, that is the end of the matter. Because Gena was not asked, either before the jury or as an offer of proof, whether she knew what happened, we cannot tell whether the court's ruling, assuming it to have been erroneous, was prejudicial." 63 Or App at 92.

But this was cross-examination of the state's witness, and an offer of proof is not necessary as to matters sought to be elicited on cross-examination. *State v. Davidson,* 252 Or 617, 622-23, 451 P2d 481 (1969); *Stillwell v. S.I.A.C.,* 243 Or 158,

162, 411 P2d 1015 (1966); *see also Shepler v. Weyerhaeuser Co.,* 279 Or 477, 510, 569 P2d 1040 (1977). Because the trial court erroneously restricted defendant's cross-examination of a material witness, its judgment should be reversed and the case remanded for a new trial.

The majority, after conceding that it is unnecessary to make an offer of proof to preserve error as to matters sought to be elicited on cross-examination, attempts to justify its affirmance of the trial court's refusal to allow defendant to cross-examine fully Gena by misstating the record. The majority says we are not told "what question was asked that the court ruled could not be answered." 63 Or App at 92. The question is quoted verbatim in the first sentence of the second paragraph of this dissent.

The majority is in error when it assumes that the only question defendant might be entitled to ask or might wish to ask pertained to "what occurred while [she] was under hypnosis." Defendant might have wanted to ask questions regarding the conditions under which the hypnosis took place, *e.g.,* whether any drugs were administered, the number of persons present, who they were, their profession or occupations, where the hypnosis took place, when it took place and what representations were made to the witness both before and after the hypnosis session. The majority does not even intimate that such cross-examination would have been improper. Yet it upholds the trial court in forecloseing *all* inquiry.

The majority says it cannot tell whether the court's ruling was prejudicial even if it was error, because the witness was not asked, either before the jury or in an offer of proof, whether she knew what happened while she was under hypnosis. As I have pointed out above, defendant's right to cross-examine the witness is not limited to asking her what she remembers of what occurred while she was under hypnosis; the right to ask even the majority's "threshold question" was denied; and, as the majority recognized earlier in the same paragraph but then seems to have forgotten, defendant need not make an offer of proof on cross-examination.

There is no doubt that the trial court's denial of defendant's right to cross-examine was error. It is presumed to be prejudicial. Without a showing that it was not, it must be found to be so.

The majority conclude (63 Or App at 95) that "defendant never contended that Gena Luther's testimony was not admissible solely because she had been hypnotized." In the memorandum supporting his pretrial motion to prohibit Gena from testifying, defendant gave as a reason:

> "Because the investigator for the district attorney may have caused Gena Luther, under hypnosis, to change her believed perceptions, some of her own testimony may not be of her own perceptions as required by ORS 44.060 and she should be prohibited from testifying."

That language certainly appears to be sufficient to have alerted the court that defendant's objection to Gena's testimony was based on what happened during the hypnotism session.

The majority "finds" nothing in the record to indicate that defendant, at any time during the trial, offered into evidence the videotape of the hypnotic session involving Gena Luther. It was not available to be offered. Defendant's counsel had been allowed to view it before trial. The state then lost it and was not able to produce it again until after the time had expired for the court to rule on defendant's motion for a new trial. The majority goes on to say that, under *State v. Jorgensen,* 8 Or App 1, 492 P2d 312 (1971), *rev den* (1972), if the defendant had offered the videotape of the hypnotic session it should have been admitted. As noted above, it was not available and, in any event, the trial court made it clear that it would not be admitted and that no evidence of any kind as to what occurred during that hypnotism session would be admitted. It was not physically possible to offer it because it was lost, and if it had been available, an offer would have been futile.

In *Jorgensen,* as here, the defendant assigned as error the admission of testimony of a witness whose memory had been enhanced by hypnotism. We reasoned that, because the witness was "subjected to prolonged and rigorous cross-examination by defendant's counsel before the jury" and the psychiatric procedures "were fully exposed in the evidence," the fact that the witness had had her memory restored by those procedures was not a basis for disallowing her testimony. In this case the cross-examination of the witness was limited to prohibit any questions regarding the hypnosis session, and the court made it clear that no other evidence exposing the hypnosis procedure would be admitted.

After *Jorgensen* the legislature enacted ORS 136.675, which provides:

> "If either prosecution or defense in any criminal proceeding in the State of Oregon intends to offer the testimony of any person, including the defendant, who has been subjected to hypnosis, mesmerism or any other form of the exertion of will power or the power of suggestion which is intended to or results in a state of trance, sleep or entire or partial unconsciousness relating to the subject matter of the proposed testimony, performed by any person, it shall be a condition of the use of such testimony that the entire procedure be recorded either on videotape or any mechanical recording device. The unabridged videotape or mechanical recording shall be made available to the other party or parties in accordance with ORS 135.805 to 135.990."

ORS 135.805 *et seq* provide for pretrial discovery in criminal cases. Affirmance of the the trial court's decision in this case renders ORS 136.675 meaningless and overrules our decision in *Jorgensen*. As required by the statute, the state made the videotape available to defendant. The trial court, however, ruled that the tape (and any other evidence of what occurred during the hypnotic session, for that matter) could not be used by the defendant. That ruling makes a hollow mockery of the discovery provided in the statute. We should not encourage it by affirming it.

I respectfully dissent.

Van Hoomissen, J., joins in this dissent.