Argued and submitted February 26, 1986, reversed January 28, reconsideration denied March 27, petition for review denied June 2, 1987 (303 Or 483)

ORVILLE LUTHER,
*Respondent,*

*v.*

STATE OF OREGON et al,
*Appellants.*

(C 84-04-31681; CA A34073)

732 P2d 24

David L. Hattrick, Deputy District Attorney, Portland, argued the cause for appellants. With him on the briefs was Michael D. Schrunk, District Attorney, Portland.

Jacob Tanzer, Portland, argued the cause for respondent. With him on the brief was Ball, Janik & Novack, Portland.

Before Richardson, Presiding Judge, and Warden and Rossman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In this post-conviction relief action, ORS 138.510, the trial court set aside petitioner's conviction for manslaughter in the second degree. The state appeals, and we reverse.

Petitioner's conviction was affirmed on appeal by this court, *State v. Luther,* 63 Or App 86, 663 P2d 1261 (1983), and by the Supreme Court on review, 296 Or 1, 672 P2d 691 (1983). A petition for rehearing in the Supreme Court was denied on January 10, 1984.

The homicide resulted from an altercation between petitioner and his nephew, Mark Luther. The nephew received a gunshot wound to his head, and petitioner was indicted for assault in the first degree. Several months later Mark died, and petitioner was indicted by a second grand jury for the crime of murder. The trial jury found him guilty of the lesser included offense of manslaughter in the second degree.

Petitioner and his nephew had separate rooms on the second floor of Gena Luther's house. Gena was petitioner's mother and Mark's grandmother. The rooms were across the hall from each other, but the doors were not directly opposite. The hall was seven feet three inches wide, and the distance from the center of petitioner's door to the center of Mark's door was eight feet ten inches.

On the night of the altercation, petitioner had followed Gena into Mark's room, where an argument and a wrestling match ensued between the two men. After the altercation subsided, petitioner went to his room and got a hand gun. Mark was shot in or near the doorway of his room. The bullet entered the front of his head and traveled upward. Petitioner testified in support of his claim of self-defense or accident that, after he got the gun and went to Mark's room, they got into a scuffle and the gun went off. He said that he did not have his finger on the trigger.

Gena told the police officers who came to investigate the shooting that she had seen the shooting and that petitioner and Mark were standing in their respective doorways

when petitioner lowered his arm and fired a shot.[1] She testified before the first grand jury on the assault charge, but that testimony was not reported. After Mark died, she testified before the second grand jury that she was on her way downstairs and did not see the shooting. Shortly after that grand jury proceeding, but before the trial, she told a deputy district attorney that she did not tell the truth in her testimony before the second grand jury. Following that disclosure, but before trial, the state had Gena subjected to hypnosis. The hypnosis sessions were recorded on video tape. ORS 136.675.

At trial, Gena's testimony regarding the relative location of petitioner and his nephew when the shot was fired varied. However, she always placed each of the men close to their respective doorways. She also testified that the gun was three feet away from Mark when the shot was fired.

The hypnosis session and Gena's testimony were a principal focus at the criminal trial. Her testimony was critical to the state's theory that petitioner intentionally shot the victim. It contradicted petitioner's trial theory that the gun had unintentionally discharged when Mark grabbed it during a struggle. A defense contention was that Gena's testimony was at variance with the physical facts and that the police investigator in questioning her during the hypnosis process asked leading questions and caused her to change her testimony from that given the second grand jury.

Petitioner challenged Gena's testimony by a pretrial motion to exclude it as contrary to physical fact, by direct examination during trial regarding the hypnosis and by a post-verdict motion for a new trial. In the pretrial motion, he contended that the facts of which the state was aware, including the trajectory of the bullet, powder burns around the wound and the location of both men, demonstrated that the testimony Gena would give would be contrary to physical facts established by scientific evidence. He contended in the written motion that the suggestive questioning of Gena during hypnosis caused her to change her testimony to conform to the physical evidence which the state was going to offer. During

---

[1] The expert witnesses' interpretations of the physical evidence varied. One indicated that the weapon had been discharged a maximum of three feet from Mark's head; another testified the range was less than twelve inches. The expert evidence also indicated that Mark was in his doorway when he was shot.

argument on the pretrial motion, petitioner's trial counsel requested that the videotape be marked as a defense exhibit "not for the submission to the jury but for the record." The court agreed, and the prosecutor stated that he had the tape in his office and would bring it down. Trial counsel said that he wished to offer evidence on the question of Gena's testimony being contrary to physical fact. The court responded that he could do so; however, counsel never did. Denial of the pretrial motion was claimed as error on appeal. We concluded that there was no error. 63 Or App at 93.

During trial, after Gena had testified for the state, she was called as a defense witness. Trial counsel wanted to question her regarding the hypnosis. He asked:

> "After that appearance before the Grand Jury, did [the prosecutor] have you put under hypnosis?"

The state objected and, after a conference in chambers, the court ruled:

> "Well, my ruling would be that, of course, you would be entitled to inquire as to whether she had been subjected to hypnosis after her appearance at the Grand Jury and to inquire as to whether that changed her recollection of what occurred. I think that's about as far as we can go. I-I would be unwilling to introduce or to permit any testimony to go in about anything she said or did under hypnosis. * * * All you're entitled to show is the difference between the story she told before and the story she tells later, but I am not going to permit any evidence to be presented before the jury regarding what occurred during—while the time she was under hypnosis."

Petitioner's counsel asked if he could make a record on the issue outside the presence of the jury at a later time. During the discussion in chambers, he had described in detail what had occurred during the hypnosis session as disclosed on the videotape which he had viewed previously. After the case had been submitted to the jury, but before the verdict, defense counsel reiterated his desire to make a record regarding the court's rulings respecting evidence of hypnosis but indicated that he wished to wait until after the verdict to do so.

One assignment of error on direct appeal was that the court improperly sustained the state's objection to the examination of Gena regarding hypnosis. We concluded that the

claim of error had not been properly preserved, because counsel had not made an offer of proof of the questions he would have asked and the answers Gena would have given. We said:

> "Because Gena was not asked, either before the jury or as an offer of proof, whether she knew what happened, we cannot tell whether the court's ruling, assuming it to have been erroneous, was prejudicial." 63 Or App at 92.

On review, the Supreme Court addressed only that issue and concluded that petitioner had not made an offer of proof regarding the testimony which he intended to elicit from Gena.

After the verdict, petitioner moved for a new trial. At the hearing on that motion, his counsel said that he wanted to offer witnesses and play the videotape to the court to make a record for appeal regarding the questioning of Gena. That was the first time that petitioner had requested the trial court to view the tape. The prosecutor then said that he had lost the tape. It was ultimately found but not before the court had ruled on the motion for new trial. The tape was made part of the record, but the trial court declined to view it.

The testimony of Gena and the videotape are the basis of petitioner's claims for post-conviction relief. The first ground urged, and the one on which the post-conviction court granted relief, was that the state had withheld the videotape until the time for its inclusion in the record had passed which denied petitioner his right to appellate review. The post-conviction court stated in its written opinion:

> "On appeal, the Court of Appeals and the Supreme Court held that the tape was not properly an exhibit which it could consider, and hence the claimed error, had not been properly preserved by defense counsel through an offer of proof."

The post-conviction court concluded that, if the appellate courts had reached the merits on the issue, they would have held that the trial court erred in prohibiting interrogation of Gena or any other witness concerning the hypnotic proceedings. On that basis, the court concluded that petitioner was entitled to a new trial.

The issue at this juncture is not whether either appellate court was correct or incorrect in its analysis or

holding on the claim of error regarding questioning of Gena by petitioner's criminal trial counsel. The issue is whether the unavailability of the videotape during the post-trial motion hearing denied petitioner rights on appeal. In essence, the question is whether, had the tape been available, had been viewed by the trial judge and been physically made part of the record at that juncture, the appellate courts would have reviewed the claim of error and reversed the conviction. We conclude that the result would have been no different.

In the original appeal, petitioner made four assignments of error revolving around the hypnosis of Gena and her testimony. His general attack on her testimony was that it should have been excluded, because it was contrary to physical fact and that hypnotically induced testimony is *per se* inadmissible. We concluded that petitioner had never sought to exclude her testimony solely on the ground that she had been hypnotized. The pretrial motion was based on the contention that her anticipated testimony would be contrary to physical fact. We affirmed the trial court's denial of that motion. We also noted our conclusion that trial counsel had made a tactical choice not to let the jury see the videotape. Our assumption, characterized by petitioner in this appeal as speculation, proved correct. Trial counsel testified in the post-conviction trial that he had decided not to allow the jury to see the tape, because he felt that it would be damaging to petitioner's defense. In any event, it is clear that the unavailability of the videotape did not deny petitioner an opportunity to present evidence to the jury.

The claim of error in the original appeal before this court, which has now become the focus of this post-conviction proceeding, was:

> "The trial court erred in not allowing defense counsel to introduce evidence regarding what Gena Luther said or did while under hypnosis and what type of questions were asked of her."

We then analyzed the claim of error within the limits of the prosecutor's objection, which had been sustained. We said:

> "Here, objection was made to the question whether Gena had been put under hypnosis. The court's ruling would have permitted Gena to answer that question, but counsel did not pursue it. We do not know what additional questions would

have been asked. Assuming that a witness who has been hypnotized is competent to testify as to what occurred while he was under hypnosis, the threshold question is whether the witness states that he knows what happened. If he says he does not remember, that is the end of the matter. Because Gena was not asked, either before the jury or as an offer of proof, whether she knew what happened, we cannot tell whether the court's ruling, assuming it to have been erroneous, was prejudicial." 63 Or App at 92.

In that analysis, whether it was correct or incorrect, the presence of the videotape as part of the offer of proof was immaterial. We were not concerned, in addressing the claim of error, with what actually occurred during the hypnosis session. The tape was physically a part of the appellate record and could have been viewed by either this court or the Supreme Court. We noted that it was in the record but that we declined to view it, because it was not used by the trial judge and no claim of error was made regarding that fact. We relied on trial counsel's rather detailed description of what the videotape disclosed, noting that it was not contested by the state. 63 Or App at 91, n 2.

■ Despite the post-conviction court's conclusion and petitioner's insistent argument, the videotape played no part in the analysis of the issues on appeal, and its temporary loss by the state did not deprive petitioner of any rights on appeal. Assuming that the tape had been made a part of an offer of proof, that fact would not have cured the defect that we found about preserving the claim of error. There was therefore no prejudice to petitioner in the temporary loss of the tape. Accordingly, the judgment granting post-conviction relief on that issue is reversed.

Petitioner, in cross-assignments of error, contends that, if we reverse the judgment on the ground on which it was based, we nevertheless can grant relief on any of the other grounds urged upon but rejected by, the post-conviction trial court. He contends, first, that the court erred in finding that he was not denied effective assistance of counsel by the failure of his trial counsel to make a proper record for appellate review. The essence of this particular ground for relief is that petitioner's trial counsel should have made certain that the videotape, which he had requested be made a part of the record, was physically included in the record. Petitioner

presented expert testimony that it is the responsibility of trial counsel to see that the exhibits offered are actually included, even if not received. There was evidence from which the post-conviction court could have found that trial counsel's performance in that regard was constitutionally deficient under *Krummacher v. Gierloff,* 290 Or 867, 627 P2d 458 (1981). The court, however, did not find that.

■     It is, however, immaterial whether the post-conviction court was correct in its conclusion about counsel's performance because, as discussed *supra,* the temporary loss of the videotape made no difference in the actual review of the conviction in either appellate court. Thus, even if counsel was deficient in failing to insure the presence of the videotape when he offered it during the pretrial hearing or thereafter, it made no difference, and petitioner suffered no loss of rights or of effective appellate review.

The next claim for relief pleaded is that the state had used evidence which it had fabricated. The post-conviction court found:

> "I want to make clear that I do not believe the State 'fabricated evidence' as charged by the manner in which it handled the hypnosis procedure. The fact that the hypnosis procedure was badly handled does not amount to fabrication. I find no improper motive on the part of the prosecution—only clumsiness in conducting the hypnotic session."

Petitioner contends that the court erred, because the finding is not supported by the evidence.

■     The essence of this claim is that the police investigator and the hypnotist by improper means either induced Gena to change her testimony or implanted an imperfect recollection which was obviously false. Petitioner presented testimony of two psychologists who are considered experts in hypnosis. They reviewed the videotape and testified that Gena's testimony had been altered by the techniques used during the hypnosis session. Petitioner contends that the state offered no contradictory evidence and that as a matter of law, the claim is therefore proved by undisputed evidence. A trier of fact is entitled to evaluate evidence presented by expert witnesses and decide the weight to be given it even if it is uncontroverted. The post-conviction court's determination

is supported by the evidence, and it did not err in rejecting this ground for relief.

Petitioner next contends that the court erred in denying his motion to amend the post-conviction petition to include an allegation that his trial counsel was ineffective because he did not adequately prepare for trial. The final claim of error is also related; it contends that the court erred in not considering evidence that trial counsel had failed to prepare adequately for trial. In essence, petitioner contends that his counsel should have, but did not, consult with an expert on hypnosis and did not review the videotape with that expert to be prepared to cross-examine and impeach Gena and to be better prepared for the pretrial motion to exclude her testimony.

The only grounds for relief pleaded related to the way in which trial counsel conducted the trial. There was no claim for relief based on constitutionally deficient performance in investigating the case and in preparing for trial. When evidence regarding pretrial preparation was offered, the state objected and, in most instances, the objection was sustained. Petitioner moved to amend the pleadings. The court responded:

> "I am not going to permit an amendment of the pleadings at this point. I think that at this stage of the proceedings, both parties are entitled to—the State and the Petitioner are entitled to rely on the positions that they have taken in a carefully prepared case."

ORS 138.610 authorizes the court to allow amendment of a post-conviction petition. The court has discretion to allow or deny any amendment. The motion was made well into the trial and, as the court noted, it would have been a completely new ground for relief. We conclude that the court did not abuse its discretion in denying amendment of the pleading. It follows that the court was not required to consider the evidence respecting inadequate pretrial preparation of trial counsel.

Reversed.