Argued and submitted February 27, reversed and remanded May 28, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVE MONROE FORD,
*Defendant-Appellant.*

Lake County Circuit Court
040079CR; A129536

185 P3d 550

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the brief were Ingrid Swenson, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for possession of a controlled substance. *Former* ORS 475.992(4) (2003). He assigns error to the trial court's failure to obtain a written waiver of his right to a jury trial, the court's denial of his motion to suppress, and the court's admission of a crime laboratory report without requiring the state to produce the criminalist who prepared the report. The state concedes, and we agree, that the trial court erred in failing to secure defendant's written jury trial waiver. As we explain below, we either reject or do not reach defendant's other assignments of error. We reverse and remand.

The relevant facts are undisputed. Defendant lived with Santana. Police took Santana into custody because they believed that she was in possession of stolen handguns. They did not, however, have probable cause to secure a warrant to search for those guns at her residence. While defendant was present at the courthouse for one of Santana's court appearances, Officers Kamp and Glenn approached defendant and asked him if he knew the location of the stolen guns. Defendant told the officers that they could search his and Santana's residence for the guns, although he said that he first wanted to speak to Santana's attorney. After agreeing to meet defendant at the residence, the officers left defendant at the courthouse.

Defendant met the officers at the residence 10 to 20 minutes later. After expressing some hesitation, defendant said, "Okay, let's go ahead with the search." Defendant led the officers to the door, unlocked the door, and allowed the officers to enter the residence.

Once inside, the officers asked defendant where Santana might have hidden the handguns. Defendant first directed the officers to the closet in the bedroom that he shared with Santana. He then began to open the dresser drawers. He opened one of the drawers for Kamp and closed it quickly, saying that the drawer was one that he used. Defendant opened the drawer a second time for Glenn, and Glenn observed what he immediately recognized as a methamphetamine pipe. Defendant again closed the drawer.

Glenn instructed defendant, "No, bring that back here, that's a meth pipe." Defendant opened the drawer, and Glenn retrieved the pipe and also a brown bottle containing a white residue. Defendant admitted that the pipe was his but contended that he had not used it in years. He also admitted that he had smoked methamphetamine three days earlier.

The officers seized the pipe and bottle. Defendant later was indicted for possession of a controlled substance on the basis of the pipe and bottle found at his residence.

Defendant moved to suppress the seized items on the ground that he had revoked his consent to the search when he closed the drawer after Glenn saw the pipe. The trial court denied the motion. The court also confirmed with defendant that he planned to waive his right to a jury trial. Defendant orally agreed to be tried by the court, but the trial court instructed defendant to submit a written jury trial waiver. No such written waiver was ever submitted, and defendant never objected to the court's failure to secure a written waiver.

Defendant was tried to the court. In addition to the pipe and bottle, the trial court admitted a crime laboratory report identifying the residue on the pipe and in the bottle as methamphetamine. Defendant objected to admission of the report, arguing that he had a constitutional right to confront the criminalist who prepared the report and that the state should be required to call the criminalist to testify. Defendant had previously requested that the state subpoena the criminalist. The state responded that the applicable statute does not require the state to subpoena the criminalist. Neither defendant nor the state subpoenaed the criminalist. Defendant was subsequently convicted of possession of a controlled substance.

■ On appeal, defendant first assigns error to the trial court's failure to obtain a written jury trial waiver as required by ORS 136.001(2) and Article I, section 11, of the Oregon Constitution. The state concedes that the trial court erred by trying defendant without the written jury trial waiver and that such an error requires reversal. We accept the state's concession and agree that the trial court erred. *State v. Taxon*, 142 Or App 484, 485, 920 P2d 567 (1996).

Defendant next assigns error to the trial court's denial of his motion to suppress the pipe and bottle that were seized from his dresser drawer. Relying on the state and federal constitutions, defendant asserts that the seizure of the pipe and bottle was unlawful because it occurred after he had revoked his consent to the search. Once he revoked his consent by closing the dresser drawer, he argues, the officers had no lawful right of access to seize the items because they were no longer in "plain view." The state responds that the search of defendant's drawer that could contain a handgun was lawful because defendant's act of closing the drawer did not constitute revocation of his consent to the search. In any event, according to the state, once defendant opened the drawer and the pipe was in plain view, defendant no longer had a privacy interest in the pipe, and the officer was permitted to seize it.

We begin by addressing defendant's state constitutional claim. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (courts address state constitutional issues before those under the federal constitution). Article I, section 9, of the Oregon Constitution provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" Warrantless searches and seizures are *per se* unreasonable unless the state proves that the circumstances provide an exception to the warrant requirement. *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). One such exception is when the person consents to the search and has not expressly revoked that consent. *State v. Luther*, 63 Or App 86, 89, 663 P2d 1261, *aff'd*, 296 Or 1, 672 P2d 691 (1983), *overruled on other grounds by State v. Affeld*, 307 Or 125, 764 P2d 220 (1988). "Absent express revocation of an initial consent, *i.e.*, absent objection to a subsequent, closely related entry and search after the initial consensual entry and search, the permitted inference is that the initial consent continued." *Id.* If a police officer is at a lawful vantage point, however, obviously incriminating evidence in plain view may be seized without a warrant. *State v. Ready*, 148 Or App 149, 156, 939 P2d 117, *rev den*, 326 Or 68 (1997).

The state argues that the circumstances in this case are closely analogous to the circumstances in *Luther*, in which we determined that the defendant did not revoke his

consent when he closed his bedroom door. We agree. In *Luther*, police officers entered the defendant's home with his consent, and one officer saw a revolver on the floor of the defendant's bedroom. Without seizing the gun, the officer left the defendant in his room, and the defendant closed the door behind the officer. Another officer knocked on the door and told the defendant that he needed to see the gun. *Id.* at 88. The defendant came out of the room and closed the door. *Id.* at 88-89. Although the defendant tried to reopen the door, he was unable to because the door had locked. *Id.* at 89. The defendant told the officer where to obtain the key to the door. Once the officers had the key, they asked the defendant if it was the correct key, and the defendant responded that he believed so. One of the officers then opened the door, located the gun in the room, and seized it. *Id.* We concluded that, when the defendant closed his bedroom door, he did not revoke his initial consent to the search, "because defendant tried to open the door himself, told a police officer that his mother had a key and made no objection to the police obtaining the key or opening the door." *Id.* at 89-90.

■ Like the defendant in *Luther*, who, after the purported revocation, did not object when the officers opened the door, defendant in this case voluntarily reopened the drawer for Glenn. We determined in *Luther* that such an act does not constitute revocation of the defendant's initial consent to the search. So also in this case, in the absence of defendant's express revocation, Glenn was permitted to infer that defendant's initial consent to the search continued. *Luther*, 63 Or App at 89.

■ Because defendant's consent to search the drawer continued, Glenn was entitled to seize any contraband that was in plain view. *Ready*, 148 Or App at 156. We are unpersuaded by defendant's argument that the plain view doctrine does not apply because the contraband was *no longer* in plain view after defendant closed the drawer. Simply because Glenn could no longer see what he had immediately recognized as contraband does not negate the fact that Glenn had already seen it in plain view.

We reach the same conclusion under the Fourth Amendment to the United States Constitution. *See*

*Schneckloth v. Bustamonte*, 412 US 218, 219, 93 S Ct 2041, 36 L Ed 2d 854 (1973) (a consensual search is an established exception to the warrant requirement under the federal constitution); *see also Horton v. California*, 496 US 128, 133-34, 110 S Ct 2301, 110 L Ed 2d 112 (1990) (providing that, if an officer can plainly see contraband and the officer has a lawful right of access to the item, seizure of that item does not offend the Fourth Amendment). Accordingly, the trial court did not err in denying defendant's motion to suppress.

Defendant's final assignment of error is that the trial court should not have admitted into evidence the crime laboratory report that identified the residue found on the seized items as methamphetamine. Defendant contends that such an admission, over his objection that the state failed to produce the criminalist who prepared the report, violated his constitutional right to confrontation under the state and federal constitutions. The state responds that a recent amendment to the relevant statute renders defendant's contention moot. We agree.

We have already determined that defendant's convictions must be reversed and remanded because the trial court tried him without securing his written jury trial waiver. On remand, defendant will be subject to the newly amended procedures set forth in ORS 475.235, which became effective on January 1, 2008. Or Laws 2007, ch 636, § 1. The amended version of ORS 475.235 provides, in part:

"(4)   Notwithstanding any other provision of law, in all prosecutions in which an analysis of a controlled substance or sample was conducted, a certified copy of the analytical report signed by the director of a state police forensic laboratory or the analyst or forensic scientist conducting the analysis shall be admitted as prima facie evidence of the results of the analytical findings *unless the defendant has provided notice of an objection in accordance with subsection (5) of this section.*

"(5)   If the defendant intends to object at trial to the admission of a certified copy of an analytical report as provided in subsection (4) of this section, not less than 15 days prior to trial the defendant shall file written notice of the

objection with the court and serve a copy on the district attorney."

(Emphasis added.)

In this case, because the amended version of the statute will apply to defendant on remand, he will have the opportunity to object to admission of the crime laboratory report. Therefore, whether the trial court erred in admitting the report over defendant's objection that the state was required to subpoena the criminalist is a moot point. *See State v. Luers*, 211 Or App 34, 72, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007) (dismissing constitutional challenges as moot on the basis that new statutory procedures will apply on resentencing).

Reversed and remanded.