## STATE OF OREGON,
*Respondent,*

*v.*

## DONALD RENO JOHNSON,
*Appellant.*

(53522; CA A23446)

673 P2d 1380

Michael R. Minden, Salem, argued the cause for appellant. With him on the briefs was Curtis & Minden, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

**WARDEN, J.**

Defendant appeals his conviction for rape in the first degree. He assigns error to the trial court's admission of a witness's hypnosis-enhanced testimony for which no foundation had been laid, denial of his motion for a mistrial made on the basis of the erroneous admission of that testimony and denial of his motion for judgment of acquittal made on the ground that there was insufficient evidence of rape. We affirm.

The complainant spent the evening of October 2, 1981, at Wes's Lounge in Corvallis. While there, she met several acquaintances, including Linda Anderson. Ms. Anderson recalled that the complainant left the lounge at about 2:30 a.m., October 3, 1981, walking toward an old station wagon in the company of two men.

At about 4 a.m., October 3, 1981, the complainant appeared at the residence of Melton and Rose Hultburg in rural Corvallis. At that time, she was wearing only a T-shirt and underpants. She had been beaten about the head, her left eye was swollen partially closed, her face was bleeding near her lip, and she had a large bluish lump on her forehead. She was screaming and crying and repeatedly told the Hultbergs, "They raped me and they beat me." The Hultbergs took the complainant into their house and contacted the police. The police transported the complainant to Albany General Hospital Emergency Room where a routine rape victim examination was conducted by Dr. Erickson. That examination revealed dirt particles on and about the complainant's external genitalia and inside her vagina. Vaginal smears taken by the doctor were found to contain numerous spermatozoa.

The complainant was interviewed by the police on October 4, 1981. Her recollection of the events preceding the incident and the incident itself was quite sketchy. She stated that she did not recall leaving Wes's Lounge and that the first thing she could remember after being there was waking up in a field being assaulted by two men. One man was on his knees at her head, holding his hand over her mouth and nose; the other man was near her feet and was putting his fingers in her vagina. She stated that the man at her head had blond hair but could give no further description of either of her assailants. The following day, in an apparent effort to elicit further

recollection, a police officer attempted to hypnotize the complainant and reinterviewed her concerning the incident.

The primary evidence linking defendant to the crime was discovered independently of the complainant's statements. On the morning of October 3, 1981, Donald Elliker, who lived about a quarter of a mile from the Hultburg's, found several articles on the ground near his driveway. They included a pair of shoes, a pair of jeans, one earring, a belt, a billfold containing a driver's license in the name of Patrick Holland, and a savings account passbook in defendant's name. About three weeks later, after learning that an assault had occurred in that area, Elliker turned the articles over to the sheriff's department. The subsequent investigation developed the following evidence: (1) the shoes, jeans and earring belonged to the complainant; (2) defendant and Holland had been together on the night of October 2 and morning of October 3, 1981; (3) Holland had been at Wes's Lounge on the dates in question; and (4) defendant and Holland had been using their employer's 1968 Pontiac station wagon at that time.

Further evidence of defendant's involvement was revealed at trial. Defendant testified in his own behalf. He identified the belt found by Mr. Elliker as his. He testified that he and Holland were with the complainant on the night in question and that he and the complainant undressed and had consensual sexual intercourse in the back seat of the station wagon. According to defendant, Holland later stopped the vehicle and Holland and the complainant got out. Defendant testified that he saw the complainant lying on the ground, with Holland kneeling beside her; he then removed the complainant's clothes from the vehicle and dropped them near her. A short time later, Holland returned to the vehicle and the two men drove away, leaving the complainant there.

Defendant's first and second assignments of error concern the same substantive issue, and we discuss them together. The essence of his objection at trial, the denial of which was the ground on which he moved for a mistrial, was the lack of a foundation for the admission of the complainant's hypnosis-enhanced testimony in evidence. Defendant's specific objection was that no foundation was laid to show that the person who hypnotized complainant was qualified in

administering that procedure.[1] He argues that the complainant's testimony was necessarily enhanced by hypnosis because the statements she made during the initial police interview on October 4, 1981, differed from her statements at trial—in the initial interview she was less emphatic about there having been two assailants and described the man at her head as blond, whereas at trial she emphatically stated that there had been two men and that the man at her head had dark hair.

■ Assuming that admission of the complainant's hypnosis-enhanced testimony was error, we still must judge its effect under the prejudicial error test of *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973). That requires this court to determine whether the admission of the complainant's testimony that the man at her head had dark hair and that there were two men involved was very likely to have changed the result of the trial. *See State v. Van Hooser, supra,* 266 Or at 26. We are of the opinion that it was not. Complainant had consistently stated that she was assaulted by two men and, although her testimony that one of her assailants had dark hair theoretically could have been prejudicial to defendant because he has dark hair, she did not identify defendant as her assailant. Virtually all of the incriminating evidence against defendant came from other sources, including his personal property found near the scene of the crime and defendant's admissions at trial. Because the admission of complainant's hypnosis-enhanced testimony was unlikely to have changed the results of the trial, the error of the trial court in admitting it is not grounds for reversal, and the trial court's denial of the motion for mistrial was proper. *State v. Van Hooser, supra; see also State v. Eby,* 296 Or 63, 673 P2d 522 (1983).

---

[1] On appeal, defendant advances several other theories in opposition to admission of that testimony. He argues that hypnosis as a scientific technique fails to meet the reliability standard of general acceptance in the relevant scientific community as articulated in *Frye v. U.S.,* 293 F 1013 (DC Cir 1923), and that such acceptance should be a precondition of admissibility. *See State v. Collins,* 296 Md 670, 464 A2d 1028 (1983). He also argues that testimony of a previously hypnotized witness should be *per se* inadmissible on the ground that hypnosis may so alter memory that the witness is unable to distinguish what is actually remembered from confabulation and is therefore incompetent to testify. *See People v. Shirley,* 31 Cal3d 18, 181 Cal Rptr 243, 641 P2d 775 (1982). Because defendant failed to make those contentions at trial, we decline to consider them here. *See State v. Luther,* 296 Or 1, 672 P2d 691 (1983); *Pietila v. Eagles,* 46 Or App 591, 612 P2d 742, *rev den* 289 Or 588 (1980).

As his final assignment of error, defendant contends that there was insufficient evidence to sustain his conviction of rape in the first degree. That contention lacks merit. When the sufficiency of the evidence to sustain a verdict is challenged, it is not this court's function to weigh the conflicting evidence. *State v. Harris,* 241 Or 224, 405 P2d 492 (1965). Conflicts in the evidence are treated as having been decided in the state's favor. After doing that, the facts so established are considered with the facts about which there is no conflict, and we determine whether the inferences that may be drawn are sufficient to allow the jury to find guilt beyond a reasonable doubt. *State v. Krummacher,* 269 Or 125, 137-38, 523 P2d 1009 (1974). As the recited facts demonstrate, there was ample circumstantial evidence from which a jury could have found defendant guilty. The trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.